## Case No. 5,759.

### GREEN et al. v. HANBERRY.

[2 Brock. 403.] [1]

Circuit Court, D. Virginia.[2]  Nov. Term, 1830.

ADMINISTRATOR DE BONIS NON—LIABILITY FOR MONEY COLLECTED BY AN AGENT—ADMINISTRATION BOND.

1. In a suit by sundry creditors, against the estate of their debtor, after great delays resulting

[1] [Reported by John W. Brockenbrough, Esq.]
[2] [District not given.]

from the number of parties, and the complexity of the case, a decree was rendered, establishing several of the claims, and adjusting their priorities. The administrator de bonis non of the debtor, at the date of the decree, was also executor of a former administrator of the estate, and claimed a large balance to be due to the estate of his testator, from the estate of his intestate, on his administration account. The commissioner made a favourable report on this claim, but the proper parties not being before the court, no decision was made on its validity. The decree referred to, added:—"And the court, without deciding that there is at this time, assets of the estate of" the debtor, "in the hands of the administrator de bonis non, or, on the claim of" the administrator, &c., "to retain out of the assets in his hands, the balance he claims to be due, &c., to his testator, doth decree, &c., that the said administrator, &c., out of any assets in his hands, or to come to his hands, applicable to the claims hereby established: and the receiver of sundry effects and securities, &c., of the debtor's estate, &c., pay, &c." Under this decree, the receiver, without authority from the administrator de bonis non, transferred some securities for money due to the estate of the debtor, to the agent of one of the plaintiff creditors. To prevent the remittance of the money secured by these bonds, beyond the jurisdiction of the court, until the debt, (which, if established, would be of the highest dignity,) due to the estate of the former administrator, should be established, the legatees of that former administrator obtained an injunction. On the motion to dissolve this injunction, *held*: That it was immaterial whether the decree, under which the receiver acted, was final or not. The object and end of the injunction was, not to alter or modify the decree, but to secure the execution of that decree according to a sound construction of its import, and to prevent its violation under the semblance of being carried into execution.

2. The decree only ascertained the amount and priorities of the debts respectively, without averring assets or directing payment, leaving it to the administrator to determine on the applicability of the assets; and the receiver, being subordinate to the administrator, had no right to apply the assets, unless authorized by him to do so. Motion to dissolve continued.

3. An administrator who employs an agent to manage the estate of his intestate, collect debts, &c., is responsible for the money so collected, and creditors are not bound to pursue the agent: but if there is reason to believe that the account of the agent has not been correctly settled, the administrator should be permitted to show cause against the report, in that particular.

4. Where an administration bond is joint, each administrator is a surety for the other, and is bound for the whole. But if the representatives of the co-administrator against whom a balance is reported, are not before the court, the report is ex parte as to them, and cannot bind them, and, consequently, cannot affect his co-administrator.

This was a motion to dissolve an injunction awarded at the suit of the plaintiffs, legatees of the late Peter Lyons, to restrain John Wickham, one of the defendants and the attorney at law, and in fact, of the representatives of Capel and Osgood Hanberry, from paying away, if collected, a sum of money claimed by him under a decree of this court, pronounced in December, 1828, in a suit depending between Lidderdale's Executors et al. v. Robinson's Administrator; the ultimate object of which suit is to distribute the estate of John Robinson, deceased, among his creditors, according to law. The suit was

brought, originally, by Lidderdale's executors, against Edmund Pendleton and Peter Lyons, the administrators of the said John Robinson, to recover a sum of money due to the estate of the plaintiffs' testator. The administration accounts of the defendants on the estate of their intestate, were referred to one of the commissioners of this court. These accounts being unusually complicated, and the suit being, on account of their complexity, long depending, the other creditors of Robinson have filed bills, asserting their respective claims on his estate. These several claims were also referred to the commissioner, with directions to report the amount and dignity of each, in order to enable the court to distribute the legal assets of the intestate, among the creditors, according to their respective priorities. This report having been made, the cause came on to be heard again in December, 1828, when a decree was pronounced, establishing the amount of debt payable to several of the creditors, and, also, establishing their respective priorities. The debt of lowest dignity thus established, was one due to the representatives of Capel and Osgood Hanberry, which was a simple contract debt, amounting to $17,415.16. While the suit was depending, Peter Lyons, the surviving administrator of John Robinson, departed this life, and the suit was revived and continued against James Lyons, administrator de bonis non of John Robinson, and also executor of Peter Lyons, deceased. A claim to a large amount was made by the executor of Peter Lyons, deceased, as being due to him as administrator of John Robinson, deceased, and this debt, if established, would, of course, be of higher dignity, than the debt due to Hanberry's executors. A large balance was reported by the commissioner in his report of June, 1824, as due to the estate of Peter Lyons, from the estate of his intestate; but this debt was controverted on various grounds, by the counsel for Hanberry. The exceptions filed to this item of the report, are discussed by the chief justice in the case of Lidderdale v. Robinson [Case No. 8,337], to which the reader is referred, but no decree was rendered establishing this debt, the proper parties not being before the court. After detailing the several claims which it established, the decree of December, 1828, adds: "And the court without deciding that there is, at this time, assets of the estate of Robinson, in the hands of his administrator de bonis non; or, on the claim of the said James Lyons, to retain out of the assets in his hands, the balance he claims to be due, from the estate of Robinson to his testator Peter Lyons, doth decree and order that the said James Lyons, administrator de bonis non, of the said John Robinson, out of any assets in his hands, or to come to his hands, applicable to the claims hereby established; and James Lyons, Jr., the receiver of the sundry effects and securities of the said Robinson's estate, under the order of the court in this cause on the 15th of December, 1825, out of the funds by him received, or to be received, from said effects and securities, should either, or any of the creditors whose claims are hereby established, be willing to take such effects or securities at their nominal amount in discharge of their claims, pay, &c." Under this decree, the receiver, without any authority from the administrator de bonis non of John Robinson, has transferred some securities for money to the estate of the said Robinson, to John Wickham, the agent of Hanberry's representatives. Among other securities assigned to Hanberry's agent, was a debt due from the estate of John Lyons, deceased, and his executor, Peter Lyons, the younger, executed two bonds for the amount of the debt, of rather more than $5,000 each, to Mr. Wickham, and executed to him a deed of mortgage, to secure the payment thereof. It was to prevent the remittance of the money, secured by these bonds and mortgage, to the creditors beyond the jurisdiction of this court, until the debt due to Peter Lyons's estate from the estate of Robinson, should be established by a decree of the court, in order that it might be, in the first instance, applied to the payment of this debt of superior dignity, that the injunction was awarded. The parties, plaintiffs to the bill of injunction, were the legatees of the said Peter Lyons, deceased.

Mr. Wickham, on behalf of Hanberry's executors.

Chapman Johnson, for plaintiffs.

Mr. Wickham contended:

(1) That the decree of December, 1828, which is partly recited above, in favour of Hanberry's representatives, being in full satisfaction of their claim on Robinson's estate, was a final decree as to them, and that they thenceforward ceased to be parties to the cause. There being no allegation or proof of fraud or collusion between Hanberry's representatives and James Lyons, the elder, the executor of Peter Lyons, deceased, and administrator de bonis non of John Robinson, or the receiver who assigned the securities in satisfaction of the decree, the complainants, claiming only as legatees of Peter Lyons, can have no right to arrest or open any proceedings in law or equity. The defendants are entitled to the benefit of the established rule of equity, that when a creditor has recovered of an executor or administrator, a sum of money, in a fair course of legal proceedings, no other creditor of the deceased, nor a legatee, or distributee of that creditor, has a right to interfere and compel a repayment of the money so recovered. (2) That Peter Lyons was not a creditor of Robinson's estate, but, that on the contrary, he was largely a debtor to that estate. It is true, that by the report of the commissioner, it appears that on a separate account raised by the commissioner between the estate of Peter Lyons and that of John Robinson,

Peter Lyons's estate is made a creditor; but there is a special statement by the commissioner, in which, by charging the estate of Peter Lyons with a balance reported in the same account to be due from Edmund Pendleton, his co-administrator, and one due from George Brooke, an agent employed by the administrators to aid them in the transaction of their business, there is a large balance due from the estate of Peter Lyons, to that of Robinson. These two charges, I maintain, are properly to be opposed to any claim on Robinson's estate, by the representatives of Peter Lyons, as the administration bond executed by Lyons and Pendleton was a joint bond, and George Brooke was employed by them in the collection and payment of debts, and in doing the business, which they, as administrators, were themselves bound to do, or else, to be answerable for his acts. But if this were not so, it is apparent from the report, that if the accounts were properly stated by the commissioner, Peter Lyons would be found on other grounds, so far from being a creditor, to be a debtor to Robinson's estate. For a considerable period during Lyons's administration, there were no vouchers produced to sustain the accounts. The commissioner states, that the report was made up on a former report of Commissioner Hay, to the court of chancery, which report was never confirmed. The counsel insisted, that neither the administration books, nor such a report, was a legal ground for reporting a balance in favour of Peter Lyons.[3] Again.—Hanberry's judgment, when assets, was rendered in June, 1767; yet the commissioner has allowed credits to a large amount for payments made in discharge of debts subsequent to that period, due from Robinson's estate, some of them, it is believed, of no higher dignity than Hanberry's debt, and on which no judgments, or subsequent judgments were obtained. Now, I insist, that when a judgment, when assets, is obtained by a simple contract creditor, no payment to a creditor by simple contract, who has not obtained a judgment, can be set up against the creditor who has. Finally, the report itself, furnishes strong internal evidence, that Peter Lyons never could have been so largely in advance to an estate, in debt to an enormous amount, without any certain prospect of reimbursement. In the year 1799, and for several succeeding years, Peter Lyons received large sums of money

[3] The question of the admissibility of this evidence, in such a case, had already been investigated by the chief justice, in considering the exceptions to this identical report. The chief justice said that under the circumstances of this case, after so great a lapse of time, he was strongly inclined to the opinion, that vouchers to sustain this administration account, ought not to be required; but that the books of the administrator, when they appeared to have been fairly kept, and a commissioner's report founded upon them, ought to be received as prima facie evidence of its correctness. See Lidderdale v. Robinson, already referred to.

for Robinson's estate, besides upwards of $5,000 borrowed by him from the estate, under the direction of the court of chancery, and, that during this period, except a payment of upwards of £300, his payments were trifling. The commissioner manages to sink these receipts, and make a large balance due to Peter Lyons's estate, by crediting him with large advances made in the early part of his administration, and this, without any legal evidence, and relying solely on the administrator's books, and Commissioner Hay's report, which was never sanctioned or confirmed in any manner. It is incredible that these large advances could have been made by the administrator, to an estate universally understood to be insolvent. But if the court will entertain jurisdiction of the cause, and permit the complainants to proceed, it is insisted by the counsel, who is also the counsel for Lidderdale's executors, that they shall be compelled to make Lidderdale's executors parties defendants, and as the complainants allege that James Lyons, the administrator de bonis non of Robinson, and executor of Peter Lyons, is dead, insolvent, that they may be compelled to pay out of the moneys and effects received by them from the said James Lyons, as legatees of Peter Lyons, whatever balance shall be found due from the estate of Peter Lyons, to that of Robinson.

Mr. Johnson in reply, said he could not perceive how it was important, whether the decree enjoined was final or interlocutory? This question can only affect the form in which its error, if there is error, is to be corrected. Whether the parties to this bill, who are not parties to the decree, may impeach it, is another question. They are the legatees of Peter Lyons, deceased, and it may be, that the administrator is the proper representative of that estate, to correct the errors in the decree. The legatees had certainly sufficient interest to justify them in staying the money in this country during vacation, till by motion or bill of review, the decree could be examined and corrected. Now, the administrator de bonis non of Peter Lyons, may be regularly heard to ask a correction of the decree. If the court thinks the decree interlocutory, then, on his behalf, I submit the motion to correct it: if the court thinks the decree final, then, a bill of review will be submitted, assigning the same error. James Lyons ceased to be the executor of Peter Lyons before his death, and the sheriff of Hanover, James Underwood, is the administrator de bonis non, in whose behalf the proceeding is had. The error we complain of, is this: That without deciding the amount due to the estate of Peter Lyons, and without ascertaining that there would be assets remaining to satisfy that amount, the court has directed payment of the simple contract debt due to Hanberry. The commissioner's report shows a large balance due to Peter Lyons, one of the administrators of

Robinson, and there are no apparent assets to satisfy it. The report, it is true, is excepted to, but these exceptions have not been decided: and can it be right, with a report of a commissioner, uncondemned by the judgment of the court, that there should be a decree disregarding it?

Mr. Wickham urges various objections, to the balance reported as due to Peter Lyons's estate. (1) It should be reduced by charging him with Brooke's balance. The answer to this is, that he is charged with a moiety of Brooke's balance, and still there remains due $13,980 11. (2) He is liable for the balance due from the estate of his co-administrator, Edmund Pendleton. Pendleton's representatives are not parties to the cause, and, therefore, his balance can have nothing to do with the case. They will be ready to answer that balance, whenever they are brought before the court. I have looked into Pendleton's account, and will be able to show, when his representatives are before the court, that he is a creditor, not a debtor. (3) There are no vouchers to sustain the account in favour of Peter Lyons. Answer.—If, instead of settling the account, as the commissioner of this court has done, by reference to the report of Commissioner Hay, we are to proceed upon the exhibition of vouchers, then, the court must decide that point, and send us before the commissioner for the exhibition of these vouchers. The debts and the credits have both come from Commissioner Hay's report, and if that is to be discarded, we will soon produce from the archives of state, evidences of payment into the treasury, sufficient for our purpose. At present, however, until the court decides upon the exceptions to the report, we must hold its balances as our guide, in relation to all the parties before the court. (4) There is internal evidence in the account itself, that the enormous balance reported in favour of Peter Lyons, is not correct. He would not have been so largely in advance to an estate, regarded as insolvent. In answer to this objection, it is sufficient to observe, that an inspection of the account will show, that the balance due to Peter Lyons, is far short of his commissions, with interest upon them, and that the sums received by him, in the latter part of his administration, have not been more than enough to sink the interest upon the arrears of his commissions. He has, therefore, not advanced money from his pocket, but has only omitted to retain his full commissions. (5) As Hanberry's judgment was rendered in 1767, when assets, the disbursements made since then, to debts due by simple contract, are a devastavit. Answer.—It does not appear that there are any such disbursements, and if this fact is to be discussed, it must be before a commissioner, when the evidence must be adduced. Those disbursements do not appear to have been objected to, before the commissioner. It is not to be presumed, against the commissioner's report, that the administrators, both legal men,[4] and men of business, have committed a devastavit by paying debts, without regard to legal priority. It appears to me, that the report must be taken as correct, or it must be sent back to a commissioner; and if any thing is claimed, on account of Mr. Pendleton's supposed balance, his representatives must be made parties. I am their counsel, and will consent to bring them before the court without delay, and have their account settled.

But Mr. Wickham insists, that the plaintiffs in the injunction case, must make all necessary parties, on pain of having the injunction dissolved. This we cannot think right; Peter Lyons's administrator de bonis non, has a right to be heard; he is a necessary party to the decree. He demands to be heard. He has a right by motion, or bill of review, to examine the decree, and have the errors corrected. It is a consequent right, to stay the money in this country, which that decree is about to send out. And the court would not impose upon him the necessity of becoming plaintiff, taking the labouring oar, and paying all expenses. He is defending himself; defending the claim of his intestate, to assets which ought to satisfy his demand. And there is no precedent for holding over him the penalties of an erroneous decree, to compel him to manage the plaintiffs' cause. If Lidderdale wishes to pursue his claim, let him take the proper steps. If he thinks Peter Lyons a debtor, and that he can recover any thing from his legatees, let him make those legatees defendants. But he has no right to use Hanberry's decree, in order to coerce Lyons's legatees to make him a defendant. For these reasons, we oppose the discharge of the attachment, and if it is discharged as to the present plaintiffs, upon any formal objections to the mode of relief which they seek, then, we ask it, or its equivalent, on behalf of the administrator de bonis non.

Mr. Wickham, in reply to the remarks of the plaintiffs' counsel, observed, that, whether the decree in favour of Hanberry be final or not, the complainants can have no right to impeach it, except on the ground of fraud and combination between those who were parties to the decree. He understands the uniform course of decision to be against such right; and in the case of creditors, whose right is preferable to that of legatees, he believes no case can be found, where a creditor has ever been held entitled to impeach or hinder the effect of a judgment in favour of another fair creditor, on the ground that there are not effects for both, and that his debt is of superior dignity. The reasons for the rule rest on settled principles of law and equity, and if it were not established, the counsel for the plaintiffs, might easily support his position by authority—but this he certainly cannot do.

---

[4] Edmund Pendleton and Peter Lyons were both judges of the court of appeals of Virginia.

The counsel for Hanberry's executors, considers the decree in their favour final. A sum of money is decreed to be paid, by the assignment of debts, in satisfaction of their demand. The debt of Peter Lyons, the younger, has been satisfied by the taking of a new security from him. The difference between a final interlocutory decree, relates to the power of the court. In the former case, the party against whom it is entered, must file a bill of review, and show error in the decree, before he is entitled to relief. If the decree be interlocutory, the court can, for good cause, on motion, set it aside. Whether the present administrator of Peter Lyons can file a bill of review, is not the question; he has not done so, and the legatees have no right to set aside the proceedings in a suit fairly conducted, to which they were not, and ought not, to have been parties. But even if the administrator of Peter Lyons were before the court, on a bill of review offered by him, there could not be the least ground for setting aside or suspending the operation of the decree at his instance, there being no evidence in the cause, that the estate of Robinson is in debt to that of Peter Lyons, but direct proof to the contrary. The reports of Commissioner Ladd have been excepted to by the counsel for Hanberry, but not by the administrator of Lyons. Now, admitting the report to be right throughout, Peter Lyons's estate, at the date of the report, was indebted to that of Robinson $6248 98, besides $5034 42, borrowed from the court of chancery on the 19th of November, 1807, amounting, with interest, to $9902 21, the whole amounting to $16,151 19, as will appear by the report, page 248. It is true, this balance is obtained, by charging him with the balance due from George Brooke, his agent, and that from Edmund Pendleton, his co-administrator, for whom he was security. Now, as Brooke did the business of the estate for him, as his agent, he is, undoubtedly, liable immediately, and directly, for Brooke's acts; and as for the balance due from Pendleton, he was undoubtedly liable, and never could claim any thing from the general fund. The creditors are entitled to that, and it is the business of his administrator to go against Pendleton's estate. It is remarkable, that the commissioner, page 70, makes Pendleton's estate debtor $11,809 29, and in page 173, makes Brooke's estate debtor $16,839 61, the aggregate of which is, $28,648 90, instead of $20,-229 09, which the commissioner states it to be in page 248. This plain error in the addition of these two sums, of $8419 81, is to be added to the balance due from Peter Lyons's estate, so that it was in debt to that of Robinson's, at the date of the report, $24,571, instead of $16,151 19. With regard to Edmund Pendleton's debt, he would add, that if Peter Lyons, on his own transactions, was an admitted creditor of Robinson's estate, and preferred his claim as a creditor,

and he was an admitted debtor to the estate as surety for another person, solvent or insolvent, for a larger sum, he never could recover on his separate claim in law or equity; one debt being set-off against the other, he would, with respect to the debt for which he was security, be left to his remedy against his principal. Whether this statement. is right in its details or not, there cannot be any doubt on the face of the report, that Peter Lyons's estate is largely in debt to that of Robinson. It is, therefore, only by showing error on the face of the report, that the plaintiff, Green, can ask a suspension of the decree, even admitting that he can stand in the place of Lyons's administrator. Now, the report (as well it might be) was so satisfactory to the administrator of Peter Lyons, that he never filed a single exception to it, and the legatees have no right (except on the ground of fraud, which is not alleged) to step in his place, and raise objections which he did not make. It may be said, that as the suit is still depending, it is not too late to except. It is a sufficient answer to say, that by omitting to except, when the decrees in favour of Hanberry and the other creditors were asked for, he admitted that he had no objections to the report, that could affect their rights.

It is urged, that the court ought not to have decreed in favour of Hanberry, until it had decided on the report and exceptions. The answer is, that Hanberry's claim stands, in this respect, precisely on the same footing as that of every other creditor, whose claim had been previously allowed. The counsel for the plaintiff, Green, will contend, and perhaps justly, that if Peter Lyons was a creditor of the estate for advances properly made, he had a lien on the fund for the balance, and a priority over every creditor, including those of the highest dignity. Now, in deciding on the claims that were allowed, the court virtually determined, that other claims, not allowed, were either not established, or to be postponed to those allowed. But in point of fact, Lyons's account was repeatedly brought before the court, not by his administrator, who knew that he could not sustain a claim to any part of the fund; but by the counsel for Hanberry, who urged for a decree against Lyons's estate, first for the balance reported due from him in the report, including his responsibility for Mr. Pendleton, and then, for such further sum, as the exceptions that should be sustained, would give a right to. The court refused to decree against Lyons for Pendleton's balance, unless the representatives of Pendleton were made parties. This he did not choose to do, as it might delay the case, and there was ground to believe, that the fund would be sufficient to satisfy the claim of his clients. It was one thing to refuse a decree against Lyons without other parties, and another and very different one, to decree in his favour on his separate account, while he was

liable for a much larger sum, on account of his responsibility for Mr. Pendleton and for Brooke; and it certainly never occurred to any one, that Lyons's administrator could ever recover any thing, out of the funds under the direction of the court.

But the counsel for the plaintiffs now insists, that the representatives of Lyons, have nothing to do with Pendleton's accounts. Yet the former was answerable, on the administration bond, for Pendleton's balance, and he and Roane, representatives of Lyons, are plaintiffs, and Hanberry's representatives are now entitled to all the rights of defendants in equity. It is suggested, however, that Pendleton's account is incorrectly stated, and that he may be found a creditor. Of this there is not the smallest evidence in the cause, and it is remarkable, that the complainants, relying solely on the report for an enormous balance alleged to be due to Peter Lyons, for advances to an insolvent estate, without any probability of reimbursement, (for all the funds have since come in from the lead mine property, which was a very doubtful and litigated claim, and from Byrd's estate, which was long considered insolvent, and becoming otherwise from the rise of Richmond property), should consider this report of no authority with respect to Pendleton's estate. But even if Pendleton's account should be thrown out of the case, Lyons's estate will be found in debt, if it is charged, as it ought to have been, in the first instance, with Brooke's balance. Brooke was the mere agent of Lyons, (or perhaps of Lyons and Pendleton jointly), and his account should have formed a part of that of the administrators; as they employed him to do their duty, his acts were theirs. It is evident from the report, that the very great balance, reported in favour of Lyons, against all probability, rests only on a report of Commissioner Hay, which has never been confirmed or acted on, and on Lyons's own books. On this, the counsel for the plaintiff remarks, that Lyons's commissions amount to a very great sum, and that vouchers sufficient for the purposes of the estate, can be got from the treasury. With regard to commissions, they are always a regular and proper charge. When Mr. Lyons received money, his commission was a proper and regular charge, and the amount was his, as much as any other part of his property, and he would be just as unwilling to lose property, thus acquired, as any other; and as to his getting vouchers enough for this purpose, from the treasury, it is considered that this idea is founded on a misapprehension of an established rule of equity. Every administrator is bound by his duty and his oath, to return an inventory of goods, debts, &c., and an account. He is chargeable for all the items of account rendered by him, and can only discharge himself by vouchers; we have a right to take the debit side of his account as he renders it, and call on him for vouchers in support of the credits he claims. All his commissions are allowed him, and it is not pretended, that any credits for payments in the treasury, or any others, are omitted in the account. He will only add, that if, contrary to the evidence in the cause, and to all probability, Peter Lyons's estate should be found in advance, there cannot be a doubt, that the funds in the hands of the receiver, absolutely secure, as he, (one of the representatives of Peter Lyons) will say, amounting to upwards of $10,000, will be much more than sufficient to answer the claim. Relying that the injunction will be dissolved, and the attachment discharged, the counsel for defendants submits, that if the suit goes on, proper parties should be made, and if an account is directed, there should also be an account of the estate of Pendleton, in the hands of his devisees. The complainants allege, that the executor is dead, insolvent, and if the estate of Lyons is indebted to that of Robinson, which there is every reason to believe, the creditors of the latter, ought to receive satisfaction in this suit, out of Lyons's estate. Lidderdale's executors, for whom he is counsel, who are the only creditors before the court whose claims have not been adjudged, are as much interested in every question in the cause as Hanberry's executors, except that the latter have got their decree. Whether Lidderdale's executors can be made formal parties, is perhaps no great matter, provided the complainants are held to the necessity of abiding the result of the account, if it should be against the estate of Lyons.

MARSHALL, Circuit Justice. The motion to dissolve this injunction, is supported on several grounds, which will be separately considered.

1. It is contended, that the decree of December, 1828, was final, as to the representatives of Capel and Osgood Hanberry, and they ceased to be parties to the cause; consequently, the decree, as to them, cannot be changed by the court, in the manner now asked, on the part of the representatives and legatees of Peter Lyons, deceased. Were it to be admitted, that the decree is final, and that the court cannot now modify it, this admission, would not, I think, avail the present defendant. This court is not asked to modify or alter its decree; but to restrain the defendant from placing beyond its reach, a sum of money which the plaintiff claims, and which he insists the decree does not give to the defendant. To estimate the value of this argument, it becomes necessary to look at the decree itself, and to ascertain its extent. It does not positively assert the right of the representatives of Capel and Osgood Hanberry, to a single dollar, nor positively direct the payment of a single dollar to them. It ascertains the amount of the debt due to each individual, and the relative dignity of those debts; but does not aver the

existence of assets for the payment of any one of them, and, consequently, does not direct the payment of any one of them. The court, in express terms, refuses to decide that there are assets in the hands of the administrator de bonis non, which are applicable to the payment of the claims thus established, and assigns as the reason of this refusal, that no decision had been made on the accounts of Peter Lyons, the former administrator of Robinson, or on the claims of James Lyons, his executor, and the administrator de bonis non of Robinson, to retain the assets in his hands to satisfy the debt to his testator. The court, therefore, directs the payment, not absolutely, but out of such assets as may be applicable to the claims which had been established: obviously, leaving it to the administrator to determine the applicability of the assets. The decree then proceeds to direct the receiver to pay the claims out of the money which may come to his hands, or to transfer the securities to any creditor, who would be willing to receive them at their nominal amount. The part of the decree which is addressed to the receiver, is obviously subordinate to, and dependent on, that part of it which is addressed to the administrator. The administrator must decide on the applicability of the assets, before the receiver can apply them; this is submitted to the judgment of the administrator, and might safely be submitted to him; because, being the executor of Peter Lyons, he would be careful to retain in his hands assets to satisfy that claim. If, then, the receiver, unauthorized by the administrator, proceeds to transfer the assets to the agent of Capel and Osgood Hanberry, the injunction which detains this subject within the power of the court, is not an alteration of the decree of December, 1828, but an order to insure the execution of the decree according to a sound construction of its import; an order to secure it from being violated under the semblance of being carried into execution.

2. The defendants insist, that Peter Lyons is not the creditor of his intestate on his administration account. Some exceptions are taken to the report, which I have not critically examined, and upon which, the state of the cause does not require an immediate decision; but there is one important point which the court ought now to notice. The administrators of John Robinson, employed George Brooke as their agent, who transacted the business of the estate to a very great extent. The commissioner reports a large balance against Mr. Brooke; the representatives of Capel and Osgood Hanberry insist, that the administrators themselves are responsible for the sum in the hands of their agent, and must settle his accounts. That the creditors of Robinson are not bound to pursue him. This is true. But the case furnishes reason for the opinion, that Brooke's account may not have been accu-

rately settled, and the court thinks, that the representatives of Robinson's administrators ought to be permitted to show cause against the report in this particular. Whether Peter Lyons alone, should be held responsible for the whole sum, which may be due from Brooke, or whether it should be divided between the administrators, is a question which need not be decided, till the sum shall be ascertained.

3. But the counsel for the representatives of Capel and Osgood Hanberry insists, that the same report which shows Peter Lyons to be a creditor of Robinson's estate, shows Edmund Pendleton to be a debtor, and Peter Lyons is responsible for the debt due from Edmund Pendleton, because their administration bond is joint, and they are consequently sureties for each other. This is true, and if the balance against Edmund Pendleton was regularly established, no doubt could be ascertained of the liability of Peter Lyons for it. But this balance is not established. The report, as to the representatives of Edmund Pendleton, is entirely ex parte, and cannot bind those representatives. The report, therefore, establishes nothing against the estate of Edmund Pendleton, and cannot be brought to bear on Peter Lyons. I perceive, therefore, no sufficient cause for dissolving the injunction, at present. The plaintiffs in the original suit may either proceed with the investigation of the accounts of Peter Lyons, holding him responsible for his own transactions, or may make him responsible for the transactions of Edmund Pendleton, by bringing the representatives of Edmund Pendleton before the court. The motion is continued.

A question of considerable importance has not been suggested, but ought to be taken into view. James Lyons, the executor of Peter Lyons, and the administrator of John Robinson, is dead, it is said, insolvent. If he died indebted to the estate of his intestate, it is an inquiry of serious import, whether the money he thus owes, ought not to be considered as so much received by him, as the executor of Peter Lyons.

Motion to discharge the attachment, and dissolve the injunction overruled, with leave to renew it; and the several reports made in the cause re-committed with directions to re-consider and report thereon, and settle, state, and report the accounts of the administration of Edmund Pendleton, deceased, on the estate of John Robinson, deceased, and the accounts of George Brooke, agent of the administrators of Robinson.

GREEN (HEAD v.). See Case No. 6,292.
GREEN (JAYCOX v.). See Case No. 7,237.
GREEN (NEAL v.). See Case No. 10,065.
GREEN (RYAN v.). See Case No. 12,186a.
GREEN (SAM v.). See Case No. 12,275.