KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.— October, 1880.

## MATTER OF MACDONALD.

*In the matter of the final accounting of the executors of* ALEXANDER MACDONALD, *deceased.*

Where executors, who are ordered by the Surrogate to have certain securities of the estate registered in their joint name, repeatedly request their

co-executor to have them so registered, but on his failure to do so, neglect to enforce, by legal proceedings, observance of the order, or to bring the matter to the notice of the surrogate, such executors will be liable for such co-executor's misappropriation of the securities.

Executors were ordered by the Surrogate to sell certain railroad bonds, and to have certain United States bonds registered in their joint names. The railroad bonds were not sold. No steps were taken to comply with the order as to the United States bonds, except that the surviving executors repeatedly requested their deceased co-executor to have them so registered. The deceased executor failed to do so, but loaned them to an association to enable it to borrow money on them. The bonds were never returned, and a judgment for their value was obtained against the association, which judgment remains unpaid. *Held*, that the surviving executors should be charged with any loss that may accrue to the estate on the investment in the railroad bonds, and should be charged with the value of the United States bonds.

MOTION to confirm the report of the auditor to whom the accounts of the executors were referred. The facts appear sufficiently in the opinion.

DEMAS STRONG, *for executors.*

ALFRED E. MUDGE, *for infants.*

THE SURROGATE.—The present executors and another one, who has since died, had an accounting before the Surrogate, in 1875, which resulted in a decree, whereby they were ordered to sell and dispose of certain city railroad bonds, and invest the proceeds in other securities as provided by law ; and also, to forthwith cause certain United States 5-20 bonds of the par value of $4,000 to be converted into United States registered bonds, of equal value, the same to be registered in the name of all the executors.

Neither direction has been complied with.

The city railroad bonds are still on hand, and the auditor reports "that they are held by the said executors as an investment of a part of the estate, but it does not

appear that there has been any depreciation in the price or value of said bonds, or that any loss has been or is likely to be sustained by said estate by reason of the continuance of said investment."

The United States bonds never were converted into registered bonds, and it seems that they were loaned by the deceased executor to an association with which he was connected, to enable that association to borrow money on them ; they have never been returned to the estate, and in their place the surviving executors hold a judgment for their value, obtained by them against that association ; it is doubtful on the evidence whether the judgment will ever be paid in full. The auditor reports that, in his opinion, the surviving executors are not responsible for any loss which may be sustained by the estate on account of these bonds. The infants, by their special guardian, ask that the executors should be charged with the value of the United States bonds, and with any loss that may accrue to the estate on the investment in the city railroad bonds.

That investment was disapproved by this court when the executors passed their account in 1875, and they were ordered to change it.

It would require very satisfactory evidence of the security of the funds invested in those city railroad bonds to induce me to come to a different conclusion, under these circumstances, and there is no such evidence before me. (King v. Talbot, 40 N. Y., 76, 90 ; Adair v. Brimmer, 74 N. Y., 539, 551.) The executors must, therefore, be held liable for any loss which may accrue to the estate on the said investment.

As to the United States bonds, these executors, as well as the one now deceased, were ordered by this court to have them registered, in the names of all the executors ; had this been done, the bonds would not have been lost to the estate.

The present executors made no effort to carry out the decree of the court in this respect beyond repeatedly asking their co-executor to have the bonds so registered. They were bound to go further, and, upon their co-executor's refusal to comply with their request, to take proceedings to compel him to obey the decree of the court, or at least to bring the matter to the notice of the Surrogate.   They are in the position of having permitted their co-executor to retain and waste part of the estate when they had it in their power to prevent it and were ordered by the court to do so.   That is enough to make them liable. (Adair v. Brimmer, 74 *N. Y.*, 539, 566.) Moreover, they knew that their co-executor had made an improper use of those bonds, and they took no steps to recover them until after his death, and two years after the decree of this court, requiring them to have them registered, so that they could not be disposed of without their knowledge or consent.

Although, as a general rule, an executor is not liable for the *devastavit* of his co-executor in which he did not participate, yet, if he can, he is bound to prevent it, and to do what is in his power to protect the estate as much as possible against the consequences of it.   (*Williams on Executors*, 1807, 1827, 1828 ; Adair v. Brimmer, 74 *N. Y.*, 539, 566 ; Clark v. Clark, 8 *Paige*, 153.)   In this case, these executors, knowing what they did concerning those bonds, and with full knowledge of the decree of

this court, ordering them to have the bonds brought within their control, were bound to take, without delay, proper legal proceedings to protect the estate against the breach of trust committed by their co-executor. Not having done so they must be held liable for the loss which the estate has suffered.

Ordered accordingly.