KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
December, 1880.

LACEY v. DAVIS.

*In the matter of the final accounting of* JOHN C.
DAVIS, *executor, and* MARGIE B. LACEY, *executrix,
of* FREDERICK LACEY, *deceased.*

Where an executrix joins with an executor in rendering an account, under
oath, of all their proceedings, and the account includes an unauthorized
investment, coupled with the statement that the investments of the
funds of the estate were made by the executors, the burden rests upon
the executrix, if she claims to be exempt from liability on any of the
investments, to prove the facts on which she founds this claim of im-
munity.

The mere fact that the other executors had charge of the books of the
estate, drew checks in their joint names, and made the illegal invest-
ment out of money received by them, does not prove that such invest-
ment was made without the consent of the executrix.

By including the illegal investment in her account, the executrix declares
her knowledge of its existence, and if there is no evidence that she
made an effort to collect it, or that it could not be collected, she is
liable for the devastavit of her co-executor.

The possession by the testator at the time of his death, of shares of the
capital stock of a corporation, does not authorize the executors, upon
an increase of the capital stock of the corporation, to subscribe for
additional shares of such stock under a special privilege given to the
stockholders of the corporation.

Executors are bound, within a reasonable time after the death of the
testator, to realize assets in the nature of personal securities and stocks ;
and if without justification they retain such assets, and in good faith
make a further investment, which is intended to and does protect such
assets, they cannot, upon their accounting, be allowed the amount of
this latter investment.   Executors are not justified in using the money
of the estate in protecting stock which should not have been in their
possession.

Where executors make illegal investments out of a fund, the interest of
which is directed by the will to be accumulated, they will be charged
with interest on the amount illegally invested at the rate of six per
cent. per annum, with annual rests.

An executor is not justified in withdrawing moneys from the fund for his

extra compensation, in anticipation of a settlement of his accounts; and having done so, is chargeable on final accounting with the amount so withdrawn, and interest.

An executor having improperly loaned the funds of the estate upon a third mortgage, is not justified in paying off the prior liens with a view of better securing the mortgage loan, and is liable for any loss occasioned thereby.

MOTION to confirm auditor's report. The facts appear in the opinion.

MAN & PARSONS, *for the executors.*

FRANK STORRS *and* E. D. CONVERS, *in opposition.*

C. T. MIDDLEBROOK, *guardian ad litem, for infants.*

THE SURROGATE.—The accounts in this matter were referred to an auditor. He has made a report to which exceptions have been taken, and they come up now for consideration, on a motion to confirm the said report.

The executors have credited themselves with an investment of $5,000, loaned to the St. John's Protestant Episcopal Church in the city of Brooklyn, on its note, without collateral security.

This was unquestionably an improper investment, and the executors should be charged with the $5,000 and interest thereon, as reported by the auditor.

But it is insisted on the part of the executrix, Mrs. Lacey, that she is not liable for this amount, because the loan was made without her knowledge or consent.

After joining with the executor, Davis, in rendering an account, under oath, which purports to be an account of all their proceedings as executor and executrix of Frederick Lacey, deceased, which account contains a list of investments including this loan to St. John's Church, with a

statement to the effect that the said investments of the funds of the estate were made by the executors, it is incumbent upon the executrix, if she claims to be exempt from liability *on any of said investments*, to prove the facts on which she founds her claim to exemption—particularly when those facts are peculiarly within her knowledge.    (1 *Greenleaf on Evidence*, § 79.)

The testimony shows that she qualified as executrix and entered upon the discharge of her duties as such. That she had nothing to do with keeping the books of the estate, and did not join in signing checks until after Mr. Ockershausen's death; that at the time this loan was made the executors Davis and Ockershausen had charge of the money of the estate, and drew it from the bank on joint checks; that the loan was made from the proceeds of a bond of the city of New York for $20,000, which was paid off to Mr. Ockershausen; that he turned over $5,000 of that amount to Mr. Davis, who loaned it to the St. John's Protestant Episcopal Church of Brooklyn, on its note, payable six months after its date, which was December 1, 1872; that this loan to St. John's Church was not entered in the books, as it was considered to be a temporary matter.

This testimony, although not inconsistent with the claim that the loan was made without the consent of the executrix, does not prove that fact.    Moreover, as she credits herself with the loan in her account, she must have been aware of its existence at some time or another, and there is no evidence that she ever made any effort to collect it, or that it could not have been collected.    In the absence of such evidence she must be held liable for the improper investment, for an executor, though not

responsible for the devastavit of his co-executor, committed without his knowledge, is bound on becoming aware of it to take such steps as may be necessary and proper to protect the estate as much as possible against the consequences of it (Accounting of the Executors of MacDonald, MSS. Op. in this court; *Wms. on Executors*, p. [1827]) ; and it is for him to show that when the devastavit of his co-executor came to his knowledge he did all that could be reasonably expected from him to protect the estate, or that it was then useless to attempt to do anything. (Styles *v.* Gray, 1 *Mac. & G.*, 422.)·

I find no error, therefore, in the auditor's report, charging the executrix, as well as the executor, with the amount of said loan, and as the interest of the fund from which it was taken was, by the will, to be accumulated after paying the annuity given to the executrix, they must be charged with interest at the rate of six per cent., with annual rests. (King *v.* Talbot, 40 *N. Y.*, 76 ; Adair *v.* Brimmer, 74 *Id.*, 555.)

The executors, which term includes the executrix, have credited themselves with the sum of $4,400, invested in forty-four shares of stock of the Old Dominion Steamship Company. The testator, at the time of his death, was the owner of one hundred and seventy-five shares of the stock of said company. Subsequently, the company increased its capital stock, and gave to the stockholders the privilege of subscribing for it at par. The executors took their pro rata share as above stated. They had no right to invest the money of the estate in the capital stock of a corporation (Ackerman *v.* Emott, 4 *Barb.*, 626·; Talbot *v.* King, 50 *Id.*, 453 ; affi'd 40 *N. Y.*, 76) ; and cannot be credited with this sum of $4,400.

The executors have further credited themselves with the sum of $10,724.99 as an investment in sixteen bonds of the Worcester Railroad Company. This investment was made in good faith, for the purpose of protecting the stock held by the estate in the Old Dominion Steamship Company, and it had the desired effect; it might therefore have been justified within the discretion possessed by the executors on the subject, if it had been proper for them to still have the stock on hand. (Collinson *v.* Lister, 20 *Beav.*, 356; In the Matter of the Estate of Brittin, N. Y. Surr. Ct., Sept., 1878.) But the testator died in 1870, and the bonds were not bought until 1875. Executors are bound, within a reasonable time after the death of the testator, to realize assets which are outstanding on investments not deemed secure in the eye of the law, such as personal securities, stocks, &c. (*Wms. on Ex'rs*, [1815, 1816].) No justification is shown in this case for continuing to keep the money of the estate invested in the stock of the Old Dominion Steamship Company, until it became necessary, as a matter of protection, to subscribe for the bonds of the Worcester Railroad Company. The executors were not justified in using the money of the estate in protecting stock which should not have been in their possession. (Adair *v.* Brimmer, 74 *N. Y.*, 539, 553.) This amount of $10,724.99 must therefore be charged back to them; and as the interest on this sum under the will would have been accumulated, they must be charged with interest at the rate of six per cent. per annum, with annual rests, according to the principle laid down in King *v.* Talbot (40 *N. Y.*, 76).

The executor, Davis, kept the books and did the cler-

ical work required in the management of the estate. Believing, after consulting with his co-executor, Mr. Ockershausen, that he was legally entitled to charge for those services, in addition to his commissions, and that $2,000 a year would be a reasonable compensation, he paid himself, from time to time between the years 1871 and 1879, different sums, amounting, in all, to $17,609.14. These payments were not entered in the books. On consulting counsel on the subject, he was informed that he had no right to such payments, and refunded the money to the estate. Upon the principle heretofore stated, and laid down in King *v.* Talbot (*supra*), he must be charged with interest at six per cent. with annual rests.

The question arises whether the executrix should not also be charged with such interest at six per cent., with annual rests; that depends upon whether she consented to or acquiesced in these payments made by Mr. Davis to himself. They do not appear in the account, *as do the investments* heretofore considered; there is no evidence to show that she did consent to them; and, in the absence of any circumstance requiring an exception to the general rule to be made, the burden of proving that the payments were made with her consent or acquiescence rests upon the party seeking to make her liable. (*Hill on Trustees*, 309; Sutherland *v.* Brush, 7 *Johns. Ch.*, 17, 22.)

The executors have credited themselves with a loan of $18,000 on property on East Sixteenth street, New York city. The testimony shows that originally the executor, Ockershausen, made a loan of $10,000 on this property; that the loan was made by taking an assignment of a mortgage for $10,000, held by Mr. Ockershausen's

brother.  Mr. Davis appears to have known that the loan was being made, and signed, with Mr. Ockershausen, the check given for the amount of the loan. He says, however, that he thought that the mortgage was a first lien on the property, and that he subsequently discovered that there were two mortgages ahead of it, one for $5,000 and another for $3,000; that upon making this discovery, after consulting counsel, he advanced $8,000 to pay off the first and second mortgages, and took the present mortgage for $18,000.  The executors having been drawn into making this loan of $18,000, as the result of an illegal and improper investment originally made, must be held responsible for any loss which may be sustained by the estate, in the absence of proof that the property is ample security for the loan.

The same observations shall apply to the loan for $35,000 on the property on Vandewater street.

The executrix may have the opportunity, if she so desires, to show that she did not participate, consent or acquiesce in any of the investments disallowed.  The executors must distribute the share of Louis F. Lacey, as directed by the will, and carry out its other provisions in relation to the distribution of the estate.  The permanent fund must be raised to the amount required by the will, and the $500 paid to Mrs. Lacey out of the residuary estate must be replaced as soon as it can be done without unnecessarily disturbing the present investments.

The auditor's report, as herein modified, is confirmed.

Ordered accordingly.