KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
August, 1881 ; again, March, 1882.

## LACEY v. DAVIS.

*In the matter of the final accounting of* JOHN C. DAVIS,
*executor, and* MARGIE B. LACEY, *executrix, of* FRED-
ERICK LACEY, *deceased.*

Where an executrix and two executors qualified, and the executors took
upon themselves the exclusive management of the estate, not even con-
sulting with the executrix, who never had possession of the assets,
but allowed the executors to have entire control, reposing confidence
in their integrity and capacity,—*Held,*

1. That these circumstances relieved the executrix from liability for losses
occasioned to the estate, by acts of the executors, committed without
her acquiescence or consent, express or implied; but

2. That she was liable for the result of any improper action of her co-
executors, to which she consented, or which she could have pre-
vented.

Accordingly, where the co-executors (1) lent $5,000, funds of the estate,
without security, and (2) invested $4,400 of the funds in the capital
stock of a corporation; and it appeared that the executrix knew nothing
of the loan, until long after it was made, and took steps to collect the
amount lent, without success,—and that she was not consulted as to
the stock investment, but was *informed* that the shares received were
a stock dividend, upon stock already held by the estate, and did not
discover that they had been bought until after the accounting began,—
*Held,* that no liability attached to her, in the premises, although she
had joined with her co-executor in rendering an account, under oath,
of all their proceedings, which account included the unauthorized in-
vestments, coupled with the statement that the investments of the funds
of the estate were made by the executors.

But where the executors subscribed for bonds to the amount of $10,000, to
protect certain stock formerly owned by the testator, being assets of
the estate, which they ought previously to have disposed of; and it
appeared that the executrix knew, all along, that the estate held the
stock, and made no effort to sell it, nor even asked the executors so to
do; on the representatives' accounting, *Held,*

1. That the executrix, having acquiesced in keeping the stock on hand,
was liable, with her co-executor, for the consequences of so doing.

2. That the accounting parties were to be charged with the amount sub-

scribed for the bonds, and, it appearing that the stock had risen, they were to be credited with any increase in the price of the stock, over and above its value at the time when it should have been sold, *i. e.,* at the end of one year after the testator's death.

The authorities upon the subject of the liability of an executor or trustee, for the *devastavit* of his co-executor or co-trustee,—collated.

Bates *v.* Underhill, 3 *Redf.*, 365,—declared overruled.

THIS was a rehearing of a motion to confirm an auditor's report on final accounting of executors, after the taking of additional testimony at the instance of the executrix. The facts appear sufficiently in the opinion.

E. B. CONVERS, *for Cornelia A. Lacey, objector.*

MAN & PARSONS, *for executors.*

F. STORRS, *for Ella L. Storrs and others.*

C. T. MIDDLEBROOK, *guardian ad litem for infants.*

THE SURROGATE.—When this matter was before me on a former occasion, I held that, inasmuch as the executrix had joined with the executor Davis, in rendering an account under oath, which purported to be an account of all their proceedings as executor and executrix of Frederick Lacey, deceased, and contained a list of investments, with a statement that the said investments of the funds of the estate were made by the executors, it was incumbent upon her, if she claimed to be exempt from liability on any of the said investments, to prove the facts on which she founded such claim, and I granted her the opportunity to make such proof (Lacey *v.* Davis, 4 *Redf.*, 402, 403, 408). She has availed herself of the opportunity thus given, and further testimony has been taken, which is now to be considered.

One of the objectionable investments was the loan of $5,000 to the St. John's Protestant Episcopal Church, in the city of Brooklyn, without security. The executrix testifies that she never knew anything of it until 1878, long after it had been made, and that she then took steps to collect the amount, but without success. She is not to be held liable for this investment.

Another of the objectionable investments was the purchase of forty-four shares of the stock of the Old Dominion Steamship Company. The executrix says that she was not consulted on the subject; that she was informed that these shares had been given to the estate as a stock dividend on the stock it already held, and that she did not discover that they had been purchased until this accounting had been begun. No liability attaches to her.

The objection to the investment of the funds of the estate in the bonds of the Worcester Railroad Company, does not rest upon the nature or insecurity of the investment, for it was made for the purpose of protecting the stock of the Old Dominion Steamship Company, held by the estate, and would have been justified, as coming within the discretion possessed by the executors on the subject, had it been proper for them to still have the stock on hand (Collinson *v.* Lister, 20 *Beav.*, 356; Matter of Estate of Brittin, N. Y. Surr. Ct., Sept., 1878). It is immaterial, therefore, whether the executrix consented or objected to the investment, although upon the evidence it is clear that she did consent to it. It is true, she immediately changed her mind, and sought to withdraw her consent; but it does not appear that the letter, which she wrote to that effect and sent to Mr. Ockershausen,

ever reached him, and later, when she was informed that the bonds had been subscribed for by her co-executors, she seems to have acquiesced in the investment, for she says she was assured by Mr. Ockershausen that other estates had taken these bonds ; that the vice-president had taken them, for an estate of which he was the guardian of his brother's or sister's children, and that, resting on that, she supposed it was all right.

The executors were held liable for the investment, because they did not show any good reason for having kept the stock of the steamship company on hand until it became necessary to protect it by subscribing for these bonds (Lacey v. Davis, 4 *Redf.*, 402, 406).

The question then is, whether the facts proved exempt the executrix from such liability.

Taking the whole evidence together offered on this accounting, it appears that up to the time of the death of Mr. Ockershausen, he and the executor, Davis, took upon themselves the exclusive management of the estate, not even consulting with Mrs. Lacey, the executrix, about it. That the executrix did not interfere ; never had possession of the assets of the estate, and was content to let the two executors manage the estate in their own way, reposing full confidence in their integrity and capacity for business. These circumstances relieve her from liability for any loss occasioned to the estate by the acts of her co-executors, committed *without* her *consent* or *acquiescence*, express or implied.

I do not understand the authorities in this State to go beyond that, and she will still remain liable for the result of any improper action of her co-executors, to which she gave her consent, or which *she could have prevented*.

Thus, in Monell *v.* Monell (5 *Johns. Ch.*, 283), it was held that when, by any act or agreement of one trustee or executor, money gets into the hands of his co-trustee or co-executor, both are answerable.

In Sutherland *v.* Brush (7 *Johns. Ch.*, 17), it was held that the executor P. was not responsible for the *devastavit* of his co-executor C., any further than he was shown to have been knowing and assenting, at the time, to such *devastavit*, or misapplication of the assets of the estate; but that he was liable, if he was knowing and assenting to it; that merely permitting one executor to possess the assets, without going further and concurring in the application of them, does not render the other answerable for such assets. And it was there said by the court that, if it appeared that any debts had been lost by the willful negligence, or the want of reasonable and ordinary care and diligence in either, or both, of the executors, the loss ought to be charged to one or both of them, to whom the default was justly to be imputed.

In Banks *v.* Wilkes (3 *Sandf. Ch.*, 99), the defendants had permitted the trust fund to pass into the custody of their co-trustee. It was invested in bonds and mortgages, and he collected $6,000 of the principal sum of one of the mortgages and used it for his own purposes, or invested it in some speculation whereby it was wholly lost. The defendants were held not to be liable, the vice-chancellor saying, that the circumstance of the individual custody of the trust fund by one of the trustees was not to be deemed a breach of trust in the others, citing Sutherland *v.* Brush (7 *Johns. Ch.*, 17, 22), and that the loss in question occurred *before* there was any known

reason or cause for the defendants to interfere with their co-trustee's possession of the bonds and mortgages.

In Kirby *v.* Turner (*Hopk. Ch.*, 309, 330), it does not appear that the defendants had knowledge of any facts which would suggest to them the propriety of interfering to prevent loss to the estate.

The same may be said of Kip *v.* Deniston (4 *Johns.*, 23), and of Ormiston *v.* Olcott (84 *N. Y.*, 339), in which it is held that there is no difference between executors and trustees, as to the rule that each is liable only for his own acts, and that one cannot be made responsible for the negligence or waste of another, unless he in some manner aided or concurred therein ; and the court adds, that there would be neither wisdom nor justice in a rule which would practically end in making a trustee a guarantor of the diligence and good faith of his associates, and hold him responsible for acts which he did not commit *and could not prevent.*   It is clear that this decision was not intended to apply to a case where a trustee had knowledge of acts on the part of his co-trustees which endangered the safety of the estate, and the continuance of which could be prevented.

In Bates *v.* Underhill (3 *Redf.*, 365), overruled in Ormiston *v.* Olcott, *supra*, the defendant had no knowledge that his co-trustee Barker was wasting the funds of the estate ; on the contrary, Barker was an attorney in good standing and credit, and on several occasions he had assured the defendant that the funds in his hands were invested, and that he was making payments out of them.

In Paulding *v.* Marvin (3 *Redf.*, 365, note), the trustee, who had never had possession of the money, did not know that it had been retained by the defaulting trustee,

but believed that it had been invested in a particular bond and mortgage, as agreed upon by the trustees.

In Clark v. Clark (8 *Paige*, 152), the head-note lays down the rule that, where an executor by his negligence suffers his co-executor to receive and waste the estate, when he has the means of preventing it by proper care, he is liable to the heirs and next of kin for the estate thus wasted.

In Johnson v. Corbett (11 *Paige*, 265), it was held that an administrator, who suffers or permits his co-administrator to misapply the funds of the estate, where he has the power to prevent it, is liable in equity for such misapplication, if the amount misapplied cannot be collected from his co-administrator.

In Wood v. Brown (34 *N. Y.*, 343), the court of appeals say that one executor is not generally responsible for the wrongful act of the other, unless he joins in it, or neglects to prevent it, when he could do so by proper care.

In Weetjen v. Vibbard (5 *Hun*, 265), it is held to be the positive duty of each trustee to protect the trust estate from any misfeasance on the part of his co-trustees, and to institute such proceedings as shall prevent it.

In Adair v. Brimmer (74 *N. Y.*, 539-566), the court of appeals hold that it is not necessary, for the purpose of establishing the liability of an executor for advances improperly made to a legatee, to show his express consent to them ; that when an executor, by his negligence, suffers his co-executor to receive and waste the estate, when he has the means of preventing it by proper care, he is liable to the beneficiaries under the will, for the estate.

thus wasted, citing Clark *v.* Clark, *supra.* See also Whitney *v.* Phœnix (4 *Redf.*, 198).

Croft *v.* Williams (23 *Hun*, 102) recognized the correctness of the doctrine that an executor, who negligently manages or carelessly permits his co-executor to waste the estate, must, on that ground, be held liable for all the assets which he might have cared for and preserved.

In Earle *v.* Earle, a case recently decided by the superior court of the city of New York, not yet reported, after alluding to the rule that each of several trustees is not bound to take upon himself the conduct of every part of the trust, and, where, according to the reasonable necessities of business, trust funds came into the hands of one trustee and a loss happened from the default of such trustee, holding that the others were not liable, though for the sake of conformity they joined in the execution of a receipt or conveyance or other disposition of the trust estate, the court say : "But this exemption from liability exists only when it is made to appear that the default of one occurred in spite of the exercise of the requisite care and diligence by those who seek immunity. The moment want of care and diligence is shown, which contributed to the loss, the case is taken out of the general rule, and the liability attaches."

In the case of People *v.* Townsend (37 *Barb.*, 520), the court say : "One administrator is not ordinarily responsible for moneys received and expended by, or for the wrongful act of his associate ; but in a case where both have the same power to act, and fail to do so, can one of them alone be made personally liable, and the other entirely exonerated ? In this case, the administrator had the principal charge and management of the

business of the estate, yet at the same time there was nothing to prevent the administratrix from taking measures to prosecute the defendant for the alleged demand. She had full knowledge of its existence, and had undoubted authority to prosecute a suit in the name of both for its recovery. Although she relied upon her associate to attend to the business of the estate, she could hardly thus relieve herself from the performance of a plain duty. It is, at least, very questionable whether this excuse is a legal bar to a claim against her for a neglect so clear and palpable. Were this an original question, I should be inclined to hold that it was not sufficient to exonerate her from liability " (citing Slaughter v. Froman, 5 *Monr.*, 19 ; Edwards v. White, 12 *Conn.*, 28 ; Hoell v. Blanchard, 4 *Dessau.*, 21 ; Collins v. Carlile, 7 *B. Monr.*, 13 ; Green v. Hapberry, 2 *Brock.*, 403 ; Morrow v. Peyton, 8 *Leigh*, 54).

In the principal case, the executrix knew all along that the estate held the stock of the Old Dominion Steamship Company, and she says that she was often congratulated on having such good paying stock. She could have sold or compelled a sale of it (Wood v. Brown, 34 *N. Y.*, 337 ; Burt v. Burt, 41 *Id.*, 46, 51, 52). But it does not appear that she ever made the least effort to get rid of it, or that she even ever asked her co-execu tors to sell it. She must be held to have acquiesced in keeping the stock on hand, and is liable, with her co · executors, for the consequences of so doing, upon the principle that when an executor or a trustee stands by and permits his co-executor or trustee to commit a breach of trust when he could prevent it, he becomes lia-

ble therefor ( *Williams on Executors*, 1827 ; Matter of Macdonald, 4 *Redf.*, 321–324).

The evidence shows that the remaining objectionable investments and payments were made without the knowledge and acquiescence of the executrix ; she is not chargeable with any neglect of duty in not having prevented them, and, therefore, no liability attaches to her.

———

Subsequently, the executrix made a further application before decree, the nature of which sufficiently appears in the following opinion, delivered March 15, 1882 :

THE SURROGATE.—The executrix, by the decision heretofore made herein, has been held liable with her co-executors, for the sum of $10,724.99, and interest, invested by the executors in sixteen bonds of the Worcester Railroad Company, subscribed for to protect the stock of the Old Dominion Steamship Company, which formed part of the assets of the estate. She now asks leave, *first*, to examine her co-executor, Davis, to prove that these bonds were subscribed for without her knowledge or consent ; *second*, to prove that, since said decision, she has sold the stock of the Old Dominion Steamship Company at $106 a share, whereas it is inventoried at $75 a share ; and she claims that in the settlement of the decree she should only be held liable, if at all, for the amount subscribed for the bonds, less the profit made on the stock, over and above the inventory price.

No ground is shown for leave to examine the co-executor, Davis. Opportunity was given to the executrix, to show the fact, which she now seeks to prove by Davis, and she could have examined him then as well

as now; besides, the testimony would be immaterial; the executors were not held liable for subscribing for the bonds, but for not selling the stock within a reasonable time after the testator's death (Lacey *v.* Davis, 4 *Redf.*, 406). But if the executors are to be charged with the amount subscribed for the bonds, they should be credited with the increase in the price of the stock over and above its value when it should have been sold, and which time is generally fixed at within a year after the death of the owner.

The executrix does not seek to offset the profit on one investment against the loss on another. The bonds were subscribed for to protect the stock, and the case may be compared to that of a loss made on the sale of stock, which was not, but should have been, sold within a reasonable time after the testator's death.

The loss in this case is represented by the difference between the value of the stock when it should have been sold, and the price for which it actually was sold, less the amount paid for the railroad bonds; and it is for that amount only that the executors are to be held liable.

The executrix, at the time of settling the decree, may show the price at which the stock has been sold since the former decision herein, and, unless the parties can agree upon the value of the stock at the end of one year after the death of the testator, evidence may also be offered at the same time on that point.

Let a decree be presented for settlement.