# Trustees of Transylvania University *vs* Clay.

**APPEAL FROM THE FAYETTE CIRCUIT.**

*Trusts and trustees.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

CHANCERY.

*Case* 127.

May 27.

The case stated.

JAMES MORRISON, who died in April, 1823, bequeathed to the trustees of Transylvania University, $20,000, in trust either to appropriate the fund to the purchase of a Library to be called "*Morrison Library*," or to invest it "in some permanent productive fund, and out of the annual interest or dividends accruing thereon, to pay the salary of a professorship to be instituted by them, and to be denominated the "*Morrison Professorship*."

The trustees instituted the Morrison Professorship, and instead of investing the sum bequeathed in permanent productive stock, they loaned it to *Henry Clay*, upon good security, for six per cent. payable semi-annually, which interest seems to have been punctually paid and faithfully applied to the salary of the Morrison Professor. *Clay* having also paid $10,000 of the principal, it was reloaned on the same terms and equal security, to *James Shelby*, who appears to have regularly paid the accruing interest.

The city of Lexington having given to Transylvania about $70,000, a portion of which was paid in city bonds redeemable at a distant day, and subject to annual payments of interest; the trustees of the University, in partial fulfilment of the expressed purpose of the donation, erected a large and suitable edifice for the Medical Department, which cost about $30,000—for $10,000 of

Trus. Tran. Uni.
*vs*
Clay.

which still unpaid, the undertaker has recovered a judg ment against the said trustees, who having no available means of voluntary payment, have suffered a part of the College Lawn to be sold under an execution on the judg. ment, and a levy to be made for the unsatisfied residue, on the medical and law *libraries.* Apprehending a sacrifice of the permanent interests of the institution, unless the impending sale under the execution could be averted, the trustees determined to collect from Clay the fund in his hands, apply a portion of it in satisfaction of the execution, and substitute in lieu of the portion so applied, an equivalent in city bonds, which, as they believed, could not be sold without a great and injurious sacrifice.

*Clay*, who is Morrison's executor, was willing to pay to the trustees the amount in his hands, but denied their authority to make the application of it, or any portion of it, which they intended to make; and, therefore, refused to pay the principal unless they would invest it more securely and productively than in city scrip.

The allegations and objects of the bill.

To settle the question thus involved, Clay filed a bill for enjoining the withdrawal of the principal from his hands, or (if withdrawn) enjoining the appropriation of it as intended by the trustees, or in any other mode without the sanction of the Chancellor.

The allegations of the answer.

An answer, which together with the bill, exhibites the foregoing facts, was filed simultaneously with the bill, and the case was, thereupon, by consent, submitted to the Circuit Judge of Fayette, who decreed "that the complainant's injunction against the defendants be perpetuated." And by consent that decree is now submitted to this Court for final revision.

The Chancellor has jurisdiction to enforce trusts and prevent a perversion or abuse thereof, and trustees authorized to invest stock *in a permanent* and profitable stock, have no right to pay their debts therewith, or withdraw it from

We do not doubt the jurisdiction of a court of equity over the trust, nor the power of such a tribunal, therefore, to enforce the trust or prevent a perversion or abuse of it. And the trustees having instituted the Morrison Professorship, there can be no doubt that they cannot, consistently with the donor's purpose, make any other use of the trust fund than that prescribed by his will—that is, an investment of it in some permanent and profitable stock. Of course they have no right to appropriate it

TRUS, TRAN. UNI.
vs
CLAY.

a safe invest-
ment, where the
interest was reg-
ularly paid, and
invest them in
stock of the city
of Lexington.

either to improvements of their property or to the payment of their debts.

But, though the contemplated use, as avowed in this case, may, in one aspect of it, be deemed an application of a portion of the trust fund to the payment of a debt, yet in substance and effect, it might be a substitution of the city stock for so much of the trust money and an investment of that money in that stock.

Then the main question is, would such an investment be sufficiently secure and productive to fulfil the benevolent purposes of the provident donor?

It is admitted that the city scrip is greatly depreciated, and could not be sold without a heavy loss. All stocks, however, are, in some degree, degraded, and the value and solidity of the best may be considered somewhat precarious. But, in such a *dilemma,* the investment, whenever made, should be in that stock which, all things properly considered, should be deemed safest and most productive. From the admissions in the answer, as well as the intrinsic character of such stock as the scrip of the city of Lexington, we cannot doubt that it is not, by far, as safe and productive as some other stocks, and should not be deemed such as the testator contemplated.

Then, considering the question of investment abstractly, we should decide that it would be an unauthorized abuse of the trust to invest any portion of the charity fund in the city bonds.

Does the fact that, if the intended appropriation be not permitted, the property of the University *may* be sacrificed to an amount perhaps equal to the whole sum proposed to be invested in city bonds, decisively or materially affect the question as to the propriety of that investment?

The trustees seem to think it does; and they acknowledge that this is their only motive for proposing such an investment.

This acknowledgment alone is decisive of the question. It is an implied admission that the proposed investment is not, in itself, the safest or most prudent, or such as they would make if they owed no debt, or could conveniently pay what they do owe without using the

TRUS. TRAN. UNI.
*vs*
CLAY.

The Chancellor in deciding on the propriety of a permanent investment in this case, should not be influenced by speculative contingencies as to losses on other property belonging to the University.

trust fund for that purpose. The end, therefore, is the payment of a debt with the trust fund.

In deciding on the propriety of a permanent investment, the Chancellor should not be influenced by specu- lative contingencies as to losses in other property, unless the trust money be injudiciously applied as a mere invest- ment. If the apprehended losses should even ensue to the worst extent, it neither appears nor should be pre- sumed that the Morrison Professorship would be thereby undermined, or its contemplated utility essentially im- paired. Such contingencies rather seem to be altogether extraneous, and are, moreover, too remote and specula- tive; and besides, we must presume that the apprehended sacrifices may be, and therefore ought to be, avoided with- out sacrificing, or jeoparding, or in any way misapplying the trust money.

The only judicial question upon this record is, we think, whether the proposed investment would, *as an in- vestment,* be the safest and best. It seems to us that it would not be.

We are, therefore, of the opinion that the trustees ought to be enjoined from using any portion of the Morrison fund as proposed by them in this case.

But the Circuit Judge, without perhaps intending it, has rendered a decree which may operate as a perpetual injunction against withdrawing the money from Clay's hands, for his injunction purports to be as comprehensive as the prayer of the bill. For this cause alone, the de- cree is reversed and the cause remanded for a more spe- cific decree, enjoining the trustees from applying any por- tion of the Morrison fund either to the payment of their debts or the purchase of bonds on the city of Lexington.

*Robinson & Johnson* for appellants; *Clay* for ap- pellee.