BARBARA ANN MURRAY ET AL.
        VS.                          } MARCH TERM, 1851.
    THOMAS FEINOUR.

[POWERS OF TRUSTEES—CHANGING INVESTMENTS OF TRUST MONEY.]

WHERE a testator purchased certain stocks, and gave them by his will to a trustee, for the use and benefit of his daughter and her children, without delegating to any one a power to change the investment, it was HELD—

That if the trustee, without an express authority from some competent tribunal, should dispose of these stocks and invest the money in other securities, he

would, upon a proper application, be decreed to replace them, and if they be replaced at a less sum than that at which they were sold, he would be compelled to invest the surplus in the same stocks, to the same uses.

The loss occasioned by an improper investment, though it were made with the consent, *or even at the urgent request* of a party not *sui juris*, as an infant or married woman, will be visited upon the trustee, at the suit of such party.

In England, if a trustee, holding money in his hands, invest it in the English three per cents; he will always be protected, as the court will sanction when done that which, upon application, it would have ordered to be done.

In this state there is no favorite stock, as there is in England, for the investment of trust money, and there is, therefore, always some difficulty when the parties do not agree, in making a proper selection ; and, consequently, there should be here more reluctance than in England in changing an investment made by the author of the trust.

If trustees have no power to change the investments, unless the instrument creating the trust, confers it upon them, the court should hesitate to give the power, unless impelled to do so by considerations of the most pressing character.

---

[The facts of the case, are fully stated in the opinion.]

---

THE CHANCELLOR:

In the will of the late Charles Feinour, dated the 5th of July, 1849, and proved on the 14th of August of the same year, is the following clause : "All the interest or dividends which shall grow due and payable on one hundred and three shares in the capital stock of the Marine Bank of Baltimore, one hundred and eighty-three shares in the capital stock of the Frederick Turnpike Road Company : on thirteen shares in the capital stock of the Union Manufacturing Company, fourteen shares in the capital stock of the Baltimore Fire Insurance Company, I give and bequeath unto Thomas Feinour, his heirs, executors and administrators, in trust, that the said Thomas Feinour shall suffer and permit Barbara Ann Murray, wife of Richard C. Murray, for her natural life, to hold and enjoy said last named grounds, property and premises, and the rents thereof to receive, free from the control of her present, or any future husband, and without being liable for his debts, and from and after her death, *in trust*, for all the children and descendants of the said Barbara Ann Murray, which she may then have living, to take *per stripes*, and not *per capita*, and

for their heirs, executors and administrators, and in case there be no such children, or their descendants, living at the time of her death, then in trust, that the same should be conveyed and assigned" to the right heirs of the devisor.

And by a deed dated the 24th of October, 1848, Charles Feinour, Jr., conveyed to T. Parkin Scott, his executors, administrators or assigns, a leasehold interest in a lot or parcel of ground in the city of Baltimore, therein particularly described, with the improvements thereon, subject to the payment of the rent reserved in said lease, *in trust,* for the sole and separate use of the said Barbara Ann Murray, during the life of her said husband, and during her widowhood, if she survive him, then *in trust,* for the use and benefit, in equal portions, of all the children of the said Barbara Ann Murray, by her said husband, Richard C. Murray, whether *in esse* or hereafter to be born, with power to the said trustee, with the consent and approbation of said Barbara Ann Murray, and her said husband, but not without, to sell, dispose of, and convey the said premises, and reinvest the proceeds of such sale, upon the same uses, and trusts, herein set forth.

Afterwards, on the 8th of January, 1851, the said Barbara Ann Murray, and her infant children, by her said husband, Richard C. Murray, the latter suing by the said Thomas Parkin Scott, as their next friend, filed their bill against Thomas Feinour, the trustee named in the will of Charles Feinour, (the elder,) stating that the lot of ground conveyed by the deed of Charles Feinour, jun., is incumbered to the amount of about six hundred dollars, and that by the payment thereof, and by the erection of suitable buildings on the rear of said lot, (the building in front being occupied by the complainants as a dwelling,) which would cost about five hundred dollars, the value of the lot would be greatly enhanced, and the income of the trust estate improved, to the great and permanent advantage of the complainants. That they do not desire to continue the investment in bank and manufacturing company stock, but would prefer a change of the investment, even if the improvement suggested should not be made, but that the trustee, Thomas

Feinour, though applied to, to make the application they desired, of the trust estate in his hands, has refused to do so, without the order and sanction of the court. And that the trustee in the deed, Mr. Scott, and the complainants, are willing that the premises in said deed mentioned, shall be conveyed to said Thomas Feinour, upon the trusts mentioned in the will of Charles Feinour, the elder.

The answer of Thomas Feinour admits the execution of the will and deed spoken of in the bill, and that he holds the property bequeathed in trust as alleged, and also about four hundred and sixty-three dollars in money. That the property conveyed by Charles Feinour, jun., is subject to an annual ground rent of $33 75, that it is likewise incumbered by a mortgage for five hundred dollars, and that there are arrears of ground rent due of about one hundred and fourteen dollars. The trustee further states that he considers the present investment in stocks, advantageous and secure, and beneficial alike, according to their respective interests, to Mrs. Murray and her children, and in view of the interests of all, the condition of the property, the incumbrances upon it, and the danger to which it would be exposed, if the rent and taxes should not be punctually paid, he does not think it would be advisable to dispose of the stocks, and invest the proceeds as purposed by the bill, and therefore he shall not do so without the order and direction of the court.

Some proof has been taken for the purpose of showing on the one side, the expediency and advantage of disposing of the stocks held in trust, and investing the proceeds as proposed by the bill, and on the other, to show that it would be injudicious so to do; but as for reasons entirely irrespective of this consideration, I am of opinion the proposed change cannot be made; I do not consider it necessary to examine the evidence to ascertain the preponderance of proof either way. The will of Charles Feinour, the elder, gives no power to the trustee to change the investment, and, therefore, it is supposed to be clear, that if, without an express authority from some competent tribunal, he was to dispose of the stock and invest the money in other se-

37

curities, he would upon a proper application be decreed to re-- place the stock, and if the stock be replaced at a less sum than that at which it was sold, he would be compelled to invest the surplus in the same stock, to the same uses. *Hill on Trustees,* 381.

The question then, in this case, is, whether the court will de- cree a change of an investment made by a testator, who did not think proper, by his will, to give such power to his trustee. It is. not necessary to decide whether there might not, from a change of circumstances, be such an urgent and imperious necessity, look- ing to the safety of the trust fund, as to induce the court to di- rect a change ; but whether, when no alteration has taken place, and the fund, so far as the court can see, is quite as secure as when the testator died, the securities selected by him shall be sold, and the proceeds invested in a different way.   In this state there is no court stock, as there is in England, where the three per cents. are always selected as the proper security for the in- vestment of funds under the control of the court, and if the trus- tee, holding money in his hands, invest it in that way, he will always be protected, as the court will sanction when done, what, upon application, it would have ordered to be done.   As then we have here no favorite stock for the investment of trust money, and no securities so little liable to fluctuation as the English three per cents., there is at all times, some little difficulty, when the parties do not agree, in making a proper selection, and there should be more reluctance here than in England in changing an investment made by the author of the trust.

· The application in this case, derives little or no strength from the fact, that the *cestui que trusts* have united in it, for being one of them a married woman and the rest infants, their con- currence is of no value.   The cases show that a loss occasioned by an improper investment, though it were made with the con- sent *or even at the urgent request* of a party, not *sui juris,* as an infant or married woman, will be visited upon the trustee at the suit of such party. *Hill on Trustees,* 382.

In this case, the stocks which it is proposed to sell, were purchased by the testator, and he gave them for the use of his

daughter and her children, to a trustee, without delegating to any one a power to change the investment. *When* he purchased the stocks does not appear, but enough appears in the evidence to show, that there has been little fluctuation in their intrinsic value for a long period of time, at least with reference to the stock in the Marine Bank, the dividends having averaged six per cent. for the last twenty years, clear of taxes and assessments. And it further appears from the evidence of the cashier, that the condition of the bank is now a safe one. There is no proof either way with regard to the other stocks. Now the proposition, is, to sell out these stocks without allegation or proof of their insecurity, and to invest the proceeds in the improvement of real estate, or in disincumbering it of liens now resting upon it. But it is supposed to be clear upon authority, that trustees have no power to do this, unless a special authority for so doing is conferred upon them by the trust instrument. *Earl of Winchelsea* vs. *Norcliff*, 1 *Vernon*, 435, and if the trustees have no such power, unless the instrument creating the trust confers it upon them, the court should hesitate to give the power, unless, impelled to do so by considerations of the most pressing character.

There is, however, another objection to the arrangement proposed in this case, which strikes me as of great force. The property proposed to be disincumbered and improved out of the proceeds of the stocks, is not held subject to the same trusts, in all respects, as the stocks themselves. The stocks are held, first, for the use of Barbara Ann Murray, during her natural life, and after her death for the use of all her children and descendants, which she may then leave living, to take *per stirpes* and not *per capita*, and in case there be no children, or their descendants living at the time of her death, then in trust, that the property shall be conveyed and assigned to the right heirs of the devisor. But the trusts of the deed, are, first, for the use of the said Barbara Ann Murray, during her coverture and widowhood, if she survive her husband, and upon her death, in trust, for the use and benefit, in equal portions of all her children, *by her said husband, Richard C. Mur-*

*ray*, whether *in erse* or hereafter to be born, with power to the trustee, with the consent and approbation of Mrs. Murray and her said husband, to sell out and reinvest the proceeds upon the same trusts. Now, the limitation over in this deed, after the death of Mrs. Murray is not to her children *generally*, and their descendants, but to her children *by her then husband*, Richard C. Murray, whilst under the will of her father, the remainder, after the determination of her life interest, is, to her children *generally* and their descendants, whether begotten by her then, or any future husband. Again, in the deed, power is given to the trustee, with the consent of Mrs. Murray and her husband, to sell out and reinvest, but no such power is given by the will, and the deed and the will appoint different persons trustees.

The proposition and prayer of this bill, is, that the stocks held under the will, shall be sold out, and the proceeds applied in disincumbering and improving, by putting up new buildings on the lot of ground held under the deed, and that this lot of ground shall be conveyed by Mr. Scott, the trustee, under the deed, upon the trusts mentioned in the will. But the trusts of the will differ from the trusts of the deed, in, that in the latter, the parties entitled in remainder are the children of Mrs. Murray by a particular husband, whilst under the will, the remainder is limited over to her children generally and their descendants. The court, therefore, is asked to change the character of the trust by permitting property held for a special set of children, to be settled for their use, to be sure in part, but also, for the use of others, who have no title to participate in it. This, without remarking upon the other differences in the will and deed, appears to me, an insuperable objection to the relief prayed by this bill, which must be dismissed, but it will be without costs.

T. P. SCOTT for Complainants.
GRAFTON L. DULANEY for Defendants.