<hr/>

## CLARY AND WIFE *vs.* SANDERS ET AL.

[DOWER—QUARANTINE.]

1. *Quarantine ; widow, when not entitled to.*—The widow is not entitled to possession of the plantation of husband, until dower is assigned her, notwithstanding it is the only real estate owned by him, if he did not reside on it.

2. *Administratrix ; when can not be charged, for failure to obtain full alleged value of a fluctuating article, like cotton.*—An administratrix, on a final settlement of her account, can not be charged with the full alleged value of an article so fluctuating in price as cotton, when it is shown, that the failure to obtain such price was without fraud, neglect, or carelessness on her part.

APPEAL from the Probate Court of Perry. Tried before the Hon. BUSH JONES.

In the matter of the final settlement of the estate of W. C. Richardson, deceased. Alice A. Richardson was appointed and qualified as administratrix of her deceased husband, W. C. Richardson, on the 23d of December, 1864; was cited, by the heirs and distributees of said estate, to a final settlement on the 3d Monday in November, 1866, and filed the following account :

"Mrs. A. A. Richardson, Adm'rx of estate of W. C. Richardson, deceased, in account current with the estate, on final settlement.

"1866.  March.  To sales 8 bales cotton, 3,777 pounds, sold by Hillyer & Alford, Selma, Ala.  Net proceeds............ $982 62
June or July.  To sales 3 bales cotton, 1,558 lbs., sold by Woolsey, Walker & Co., Mobile.  Net proceeds....... 195 85

$1,179 47

CR.

"1865.  March.  By commissions on appraised value of estate, and for vouchers 1, 2 and 3, as follows.............. .... $90 00

On the final settlement, the heirs and distributees moved to charge the administratrix—" 1st, with the rent of the plantation of the decedent, in which dower was lately assigned her, for the years 1865 and 1866 ;" 2d, with " the reasonable value of the cotton embraced in her account for settlement."

It was admitted that the vouchers exhibited in said account were correct ; that W. C. Richardson owned and possessed no real estate of any description whatever, except the plantation lying in Dallas county, Alabama, in which dower had lately been assigned administratrix, on the 10th of December, 1866 ; that administratrix was wife of said Richardson at his death, and that since the filing of the account, she has intermarried with John W. Clary, and is now his wife.

The testimony in relation to the cotton, as appears from the bill of exceptions, is as follows : Ed. Woodfin testified, that " he supposes that fifteen bales was as much cotton as was on the place; memory about it indistinct. It was in a small gin-house, with rafters on the plates, one-third full or more—perhaps a little over half full; memory indistinct."

Samuel Woodfin testified, that " there was one bale of lint cotton in the pick-room, but did not remember sufficiently to state how much seed cotton there was; it was a pretty good article."

Brotherton testified, that " he was overseer on the place, under A. J. Pool, as guardian of Richardson, deceased, from January, 1864, to March, 1865; was present at the division of property; brought it up for division, by direction of the commissioners. There was cotton on the place, made in 1864, and put in the gin-house. It was a common article, beacuse it was a rainy fall. The first picked was a good article ; afterwards it was picked off the ground to a great extent, and was not good. He was with the commissioners when they estimated the amount of cotton; had it fixed up in his mind that there were some fifteen or twenty bales; he scratched up the cotton to see its condition and quality. There was no scaffold to dry the cotton on, nor was there any lock to the gin-house. About the 15th day of May, 1865, the cotton was in pretty good condition. About half the cotton was picked off the ground; nobody took better care of cotton. It was not customary in that neighborhood to lock gin-houses. The division spoken of, occurred in January, 1864. Richardson went into the army in March, 1864, married about May, 1864, and died about November, 1864. The father of administratrix, L. C. Harrison, had charge of the place in 1865, as her agent, after the 15th of May, 1865. Harrison died in September, 1865. Administratrix's brother had charge of the place in 1866."

E. A. Blount testified, that " he had something to do with purchasing cotton since the Confederacy "went up." There is considerable difference in the price of cotton. June, 1865, 10 cents ; August, 1865, 20 cents ; September, 1865, 30 cents ; October, 30 cents ; November, 38 cents ;

December, 1865, 40 cents; January, 1866, 38 cents; February, 1866, 35 cents; March, 29 cents; April, 25 cents; June, 35 cents; September, 26 cents; October, 30 cents; November, 30 cents; December, 26 cents; January, 1867, 25 cents; February, 1867, 14 cents. This is a schedule of average prices of good cotton; other cotton 4 cents less. The foregoing estimate is based on "middling" cotton; cotton is found better than middling cotton; the lowest grades four to four and a half cents less; inferior grades still less; ' dog-tail ' still less."

W. H. Harrison testified, that " the cotton in question came near being accidentally burned, and was sold by him, as agent of the administratrix, to prevent loss. It was marked diamond E, so that it could be distinguished from my mark, [H.] The last three bales netted thirteen and a half cents, and brought $195 55 in Mobile; they were sold by Woolsey, Walker & Co., some time in June or July, 1866. I did not sell the other bales. All the cotton was common; Woolsey, the cotton factor who sold it, told me that it was sold for ' low ordinary.' I ginned and packed the cotton myself; there was in all of this cotton but 11 bales, averaging 500 pounds. I went to the place in August, 1865; had charge of the plantation, and staid there most of the time. The cotton was ginned about January, 1866; it was in plowing time. I shipped it to Selma, fearing fire, within two months after it was packed; it was sent to Graham's, where it was damaged; paid a packing bill on it. I ginned all the cotton I could find. I am a judge of cotton; have noticed it a good deal; can tell bad from good, ordinary from middling; but can not easily tell middling from low middling. The bales of cotton I ginned, I found in the gin-house; it was all that was there; know nothing about the cotton, except as I found it there. There was a lock on the gin-house when I went there; the first time I passed the gin-house, I tried the door and found it locked; don't think any cotton was stolen while I was on the place."

There was also some testimony as to the negroes using some of the cotton, before the administratrix was qualified, for spinning purposes; quantity so used not stated.

The evidence as to the residence of Richardson was as follows :

Mrs. M. J. Richardson testified, that " she was the mother of W. C. Richardson, deceased ; that he married administratrix on the 25th of May, 1864 ; at the time of his marriage he was living at her house, and had been so living from the time of his birth to the time of his marriage, except while at school, and in the army. He was born February 22d, 1846 ; was eigteen years old at the time of his marriage ; he remained at witness' house after his marriage and had his washing done there."

Brotherton testified, that "Richardson called the place his place, and called it home. When he was there, he went about from place to place among the neighbors, and then would return to the place, saying he was going home to his mother's. Mrs. Richardson, the administratrix, once asked witness' wife to fix up a room for her and Richardson. Richardson went into the army in February, 1864. When at home, he was occasionally at the plantation ; at one time he was there a week. When down at the place, he went to see his sister, and remained a day or two. He came to his plantation with his wife, soon after their marriage, and remained from three to five days ; during his absence, his wife was there during the summer, two weeks or so. She was there, once or twice, in October, 1864, and while there, visited around."

Two witnesses were examined in relation to the rent the place was worth in 1865 and 1866. They testified, in substance, that there were 500 acres of land which could be cultivated ; that it was a good average place. One witness thought it was worth about $1200 rent per year, in 1865 and 1866 ; the other, that $1500 rent was a fair charge for those years.

" This was all the evidence." The court charged the administratrix with fifteen bales of cotton, five hundred lbs. to the bale, at thirty cents, with interest from March, 1866 ; and also charged the administratrix $1250 per year for rent of the place, and interest. " The administratrix objected, and excepted to the ruling of the court, charging the ad-

ministratrix with the rents, and also on the question of cotton charged against her."

The bill of exceptions, as first set out in the transcript, did not show when it was signed; but the return to the *certiorari* shows that it was signed in term time, and was made part of the record, on appellants' motion.

The various rulings of the court, to which the administratrix excepted, are now assigned as error.

MORGAN & LAPSLEY, for appellant.—The widow is denied her right of quarantine in this case, because the plantation in which she claims it, was not shown to be connected with the place of residence of the husband, at the time of his death.

It is supposed, that this case falls within the decision in *McAlister v. McAlister*, 37 Ala. 484.

In this case, the husband had no other real estate, besides his plantation; he had no house or home besides the plantation; he was a soldier in the army when he died, and having been married but a short time, he had not made final arrangements as to the location of his place of actual residence. All his conduct indicated a purpose to settle on his plantation, which was a convenient place for a homestead, when he should come to take up his final residence.

To deny to his young widow her quarantine, in the only land her husband had, is to defeat the right entirely.

The only questions that have been considered debatable in these cases, have been *where* the widow should take her quarantine; and not whether she should be entitled to have quarantine in the only place left by her husband, where she could seek shelter, until the heir should assign dower to her.—*Pinckard v. Pinckard*, 24 Ala. 250; *Smith v. Smith*, 13 Ala. 329.

2. The court seems, without cause, to have completely disregarded the proof in the cause, as to the amount and value of the cotton with which it charged the administratrix. The amount is too large, and the price exhorbitant.

WATTS & TROY, for appellant.—1. There is no bill of exceptions signed, as the law directs, and this court will

not revise the decisions of the probate court, in matters of fact, unless there is a bill of exceptions, signed and certified as the law requires.—See *Gordon et al. v. McLeod, Ex'r*, 20 Ala. 242–3, and authorities there cited.

The Code, § 2250, requires that questions of the sort raised in this case, must be tried on bill of exceptions alone, except when the error complained of appears in the record.

This must mean that the matter complained of *properly appears in the record.* If something gets into the record, which is not properly a part of it, unless so made by bill of exceptions, it can not be looked to.—29 Ala. 91 ; see, also, *Joiner and Wife v. Key's Adm'r*, 31 Ala. 202 ; *Dunham v. Hatchlin*, 30 Ala. 483 ; *Bartie and Wife v. James' Adm'r*, 33 Ala. 34.

The statement of facts set forth in the record, does not purport to be a bill of exceptions, and does not show that it was signed *in term time ;* nor does it appear that it was *signed as a bill of exceptions.* It can not therefore be regarded as a bill of exceptions.—See *Sale v. Chamblis*, 35 Ala. 19.

2. But even if the statement of facts set forth can be looked to, there is nothing in it which shows that there was error in the probate court. The only questions complained of are—1. Whether the administratrix should be charged with fifteen bales of cotton ; and 2. With the rent of the plantation for the years 1865 and 1866.

The inventory returned by the administratrix shows that there were twenty bales of cotton. The weight of the testimony shows that the judge did not err against her, in charging her with only fifteen bales—and the price was proven to have been at least thirty cents. This court will not reverse the decision of the inferior court on a question of fact, unless it is manifestly and palpably wrong.—See *Phillips v. Phillips*, 39 Ala. 63 ; *Mahem v. Williams*, 39 Ala. 204 ; *Kirksy v. Kirksy*, 37 Ala. —.

As to the rent, the facts set forth do not show that the widow was entitled to the rents. The proof tends to show that her husband lived in Perry county, with his mother, and the plantation was in Dallas county, not at all connected with his mothers residence, and that he had never

resided on the plantation.—See Code, § 1630; *Hammon v. Boyd*, 36 Ala. 203.

3. The decrees in favor of the distributees were properly rendered against Mrs. Clary and her husband. By his marriage, he became co-administrator with her of the estate, and it was not necessary that he should have been cited to appear in court; she being before the court was sufficient.

B. F. SAFFOLD, J.—The questions to be determined are—1. Whether the widow of William C. Richardson should be charged with the rent of his land, from the time of his death to the assignment of her dower; 2. Whether the administratrix of his estate was justly chargeable with the price of fifteen bales of cotton, averaging five hundred pounds each, at thirty cents a pound.

The evidence shows that W. C. Richardson resided at his mother's, in Perry county, from the time of his marriage to his death. He had no other real estate than his plantation, which was in Dallas county. He and his wife visited the plantation several times during the brief period of his marriage, but on account of his recent marriage and his participation in the war, he had not established any permanent place of actual residence.

The Code provides that the widow may retain possession of the dwelling-house, where her husband most usually resided next before his death, and the plantation connected therewith, until her dower is assigned to her, free from the payment of rent.—Revised Code, § 1630.

It has been frequently decided by this court, that a plantation belonging to the husband several miles distant from his residence, is not so connected with the residence as to entitle the widow to possession or rents thereof until her dower is assigned.— *Waters v. Williams*, 38. Ala. 680; *McAllister's Exr's v. McAllister*, 37 Ala. 484; *Smith's Heirs v. Smith's Adm'r*, 13 Ala. 329. In all of these cases the question was rather which places, of two or more, the widow was entitled to possess or enjoy the rents of, than whether actual residence on any was required. The law, however, seems to attach the right of the widow to the residence of

the husband. To constitute residence, the intention and the fact must be united.—*Griffin v. Wall*, 32 Ala. 149 ; *Boyd v. Beck*, 29 Ala. 703 ; *State v. Hallet*, 8 Ala. 159. There can be no great hardship in this construction, as the widow is entitled to the mesne profits of her dower interest from the death of her husband to the assignment of dower.—*Slatter v. Meek*, 35 Ala. 528. The court did not err on this point.

The amount and value of the cotton charged against the administratrix, was, of course, the result of the court's construction of the evidence. The important witnesses on this point were Mr. Brotherton, the overseer, and W. H. Harrison, who ginned and packed the cotton. One says the cotton was even ordinary. The other says it was common, much of it having been picked up from the ground, where it had been beaten by the rain. Brotherton evidently guessed at the quantity from the bulk, and his previous handling of it. The ginning and packing by Harrison afforded a better ground for an estimate. There was no proof of waste by the administratrix. Mr. Blunt testifies that at the time this cotton was sold, good cotton was worth about thirty cents, and there was a considerable difference between good and bad cotton. The charge of thirty cents a pound, under the evidence, seems to be excessive. Even if the cotton was worth so much, the administratrix should not be charged with the full alleged value of an article so fluctuating in price, when it is shown that she did not obtain that price for it, without fraud, neglect, or carelessness on her part. The evidence, we think, does not sustain the quantity charged against her. On another trial the circumstances affecting the sale of the cotton may be more explicitly stated.

For the error respecting the quantity and price of the cotton charged against the administratrix, the judgment is reversed, and the cause is remanded.