# Ogbourne *v.* Ogbourne's Adm'r.

*Petition by Widow for Exempt Property in Husband's Estate.*

1. *Widow's statutory quarantine.*—The widow's statutory quarantine, or right to retain possession of the dwelling-house in which her husband most usually resided, with the buildings appurtenant thereto, " and the plantation *connected therewith,*" free from the payment of rent, until her dower is assigned her (Code of 1876, § 2238), does not extend to a plantation situated several miles distant from the residence in town, and occupied by a tenant under a contract of renting.

2. *Repealing statutes.*—A clause in a statute, repealing "all laws and parts of laws contravening this act," is only a legislative declaration of its necessary effect, and does not add to its repealing force; but, when a statute is a revision of existing statutes on the same subject, and shows on its face that it was intended to operate as the only law on the subject, it necessarily repeals all existing statutes, without express words of repeal.

3. *Exemptions for benefit of decedent's widow and children.*—The act approved February 8, 1872, entitled "An act to exempt from administration property of decedents, and vest titles in the widow or child or children" (Session Acts 1871–2, p. 91), does not create cumulative or additional exemptions to those allowed by the existing statutes (Rev. Code, §§ 2061–2), but was intended as a substitute for those sections, and necessarily repeals them.

APPEAL from the Probate Court of Montgomery.

In the matter of the estate of William H. Ogbourne, deceased, on the petition of Mrs. Susan V. Ogbourne, his widow, praying that the administrator be decreed to pay and deliver to her certain personal property of the estate, which she claimed as exempt from administration. The decedent died, intestate, in July, 1872; and letters of administration on his estate were granted by the Probate Court of said county, in January, 1873, to W. T. Hatchett, the general administrator of the county. The petition of the widow was

filed on the 1st December, 1874, and alleged that said dece-
dent left no children surviving him; that he owned, at the
time of his death, "a lot of household furniture, worth about
$250, an old buggy, of the value of $30, a new buggy, of the
value of $100, and a blind mule, of the value of $30;" that
she had retained this property, claiming it as exempt to her,
and was willing to account for it, on settlement with the ad-
ministrator; that she was entitled to $1,000 worth of the
personal property of the estate, which the administrator
had received, consisting of property appraised at $78, and
the proceeds of the sale of certain county bonds; and she
prayed that the administrator be required to deliver the
said property to her, and to pay the money to her.    An an-
swer to the petition was filed by the administrator, alleging
that the widow was not entitled to claim any exemption of
personal property in the estate of her deceased husband, be-
cause, at the time of his death, she was possessed of a statu-
tory separate estate of greater value than the exemptions
allowed by law; insisting that, if entitled to any exemptions
at all, she was not entitled to the articles specifically enu-
merated in the statute, and one thousand dollars besides;
and alleging that she had already received more than she
was entitled to have, and still retained it.

"It was in evidence that W. H. Ogbourne, when he died,
owned the house and lot in the city of Montgomery on which
he then resided, which was of the value of about $3,500, but
was incumbered with a mortgage for about $800; that he
also owned a tract of land containing about one hundred and
forty acres, most of which was cleared, and in cultivation
that year (1872) by a tenant, a colored man named Allen, to
whom deceased had rented it, with two mules and farming
implements, for the price of $300.    The value of this tract
of land was about $1,500.    It was situated about five miles
from the city of Montgomery.    The life of the deceased had
been insured for the benefit of his wife, and the petitioner
realized on the policy, soon after her husband's death, about
$14,000.    She had no other separate estate than this.    The
estate of the deceased was insolvent.    The house and lot,
and the tract of land, were sold by the administrator, under
the order of this court, subject to the petitioner's claim for
dower and exemption therein; and by agreement between
her and the administrator, she bid $1,750 at the sale; and
there being no other bid, she became the purchaser at that
price, and paid the money to the administrator.    There was
no agreement between her and the administrator, as to any
thing else than that she should bid that sum at the said sale.
In August, or September, 1862, the petitioner went to the

tract of land in the country, and applied to said Allen, the tenant in possession, to know which of the mules was the best one, saying that she was entitled to one mule as exempt, and wanted the best one. Allen told her that '*Queen*' was the best mule, and she then said, 'Then, I will take *Queen*, and the other one, *Rhoda*, is the estate's ;' but she did not take the mule out of Allen's possession, and exercised no act of ownership over it. Before the end of the rental year, *Queen* was stolen; and afterwards, after the expiration of Allen's tenancy, the petitioner took *Rhoda* as the mule exempted to her under the Code. Said Allen testified, that *Queen* was worth $160, and *Rhoda* $125, and that *Rhoda* was permanently lame. At the end of the year 1872, the petitioner received $300 from said Allen, as rent for the land, mules, &c., under the contract between him and the deceased. It was admitted by the petitioner, that the new buggy taken by her was worth $125, the old one $30, and the plantation utensils $78. James A. Farley testified, that the mule *Rhoda* was worth only $75; and he produced a note for that amount, for which he had sold her a few days after the petitioner had gotten her into possession.

  "Upon this evidence, the administrator asked the court to decree, that the petitioner was not entitled to any exemption, because the testimony showed that she owned a separate estate at the death of the deceased, of greater value than the exemptions allowed by law; but the court refused so to decree, and the administrator excepted. The administrator then asked the court to decree, that the petitioner be charged with the value of the mule *Rhoda*, on the ground that the facts in proof showed an election by her to take said mule as part of the property exempted to her; but the court refused so to decree, and the administrator excepted. Upon this proof, the petitioner insisted, that she was entitled to the household and kitchen furniture set forth in her affidavit," the estimated value being $140.25, "exclusive of the $1,000 exempted by the act of February 8, 1872; which the court refused to allow, and the petitioner excepted. The petitioner insisted that, under and by virtue of said act of February 8, 1872, she was entitled to property or money of the value of $1,000, exclusive of the exemptions allowed by the Code; which the court refused to allow, and the petitioner excepted. The petitioner claimed, also, that the $300 rent received by her was in right of her quarantine, and should not be charged against her; which the court refused to allow, and the petitioner excepted. The petitioner further insisted, that she had no separate estate during the life of her husband, and that the facts did not disclose such a separate estate as de-

barred her of dower under the laws of Alabama; which the court refused to allow, and the petitioner excepted."

The appeal is sued out by the widow, and the several rulings to which she reserved exceptions, as above stated, are now assigned as error.

J. T. HOLTZCLAW, for appellant.

E. J. FITZPATRICK, *contra.*

BRICKELL, C. J.—It is the law of this State, that the widow's quarantine does not extend beyond the right to occupy or retain the dwelling-house, where her husband most usually resided next before his death, with the offices and buildings appurtenant thereto, and the plantation connected therewith, until dower is assigned.—R. C. § 1630. When, as in this case, the husband, at his death, had his residence in a town or city, owning a plantation situate in the country, several miles distant, in the occupancy of a tenant, under a contract of renting, such plantation. is not, within the meaning of the statute, connected with the dwelling-house, and the widow cannot claim the rents thereof, as accruing to her, because of her quarantine.— *Weaver v. Crenshaw,* 6 Ala. 873 ; *Smith v. Smith,* 13 Ala. 329 ; *McAllister v. McAllister,* 37 Ala. 484 ; *Clary v. Sanders,* 43 Ala. 287. Without inquiring whether the Court of Probate has jurisdiction to allow the widow compensation for the detention of her quarantine, in any case, it is enough to say, the appellant had not the right of quarantine in the plantation, the rents of which she collected. This was the ruling of the Court of Probate.

2. The remaining question is, whether the provisions of the Code regulating the exemptions of personal property of decedents, to the widow and minor children (R. C. §§ 2061-2), are repealed by the act of February 8, 1872, entitled "An act to exempt from administration property of decedents, and vest titles in the widow, or child or children" (Pamph. Acts 1871-2, p. 91); or, whether the exemptions allowed by the last named statute, are cumulative to the exemptions the Code allows.

The repealing clause of the act of 1872 is general—of "all laws and parts of laws contravening this act;" and it does not operate a repeal of an existing statute, relating to the same subject-matter, not in conflict with the provisions of the act.—*People v. Durick,* 20 Cal. 94. It is merely a legislative declaration of the necessary effect of the act, if the clause had not been inserted. Subsequent statutes, not in-

consistent with, or repugnant to former statutes, are not a repeal of the former, unless it is clear the subsequent statute was intended to prescribe the only rule which should govern the subject.—Sedgwick on Stat. & Con. Law, 97-104 ; *Daviess v. Fairbairn,* 3 How. 636 ; *Sacramento v. Bird,* 15 Cal. 294 ; *Serann v. Buck,* 40 Miss. 268 ; *Johnston's Estate,* 33 Penn. 511. A subsequent statute, revising the subject-matter of the former statute, and evidently intended as a substitute for it, in the language of the Supreme Court of Massachusetts, "although it may not contain express words of repeal, will, on principles of law, as well as in reason and common sense, so operate."—*Bartlett v. King,* 12 Mass. 345 ; *Wakefield v. Phelps,* 37 N. H. 304 ; *Towle v. Manett,* 3 Greenl. 22 ; *Lewis v. Stout,* 22 Wisc. 234.

3. Under the provision of the Code, the exemption to the widow and minor children was matter of right, whether the husband and father died testate or intestate ; the act of 1872 limits the exemption to the widow, or minor children, of intestates. The Code confers the right on the widow and minor child or children jointly ; the statute of 1872 confers the right on the widow, if there be one, to the exclusion of the minor children, who take only in the alternative that there is no widow to take. The Code enumerates specific personal property as exempt, and if the decedent had not that property, there was no exemption, though he died possessed of a large and valuable personal property, and his family were reduced to destitution. The act of 1872 confers an exemption, not of specific property, limiting it only to value—not exceeding one thousand dollars, and it may be either of money or property. In other respects, the provisions of this act, and of the Code, are so variant, that the two can consist only by regarding the act of 1872 as cumulative, creating an additional exemption, or as a substitute for the Code, prescribing the only rule which shall control as to the exemptions of the personal property of decedents. The latter is its proper construction, manifestly. The title of the statute is indicative of this construction : "An act to exempt from administration property of decedents, and vest titles in the widow or child or children." A comparison of its provisions with the provisions of the Code shows clearly that the purpose of the legislature in its enactment was to prescribe a new and only rule on this subject. It operates a repeal of the provisions of the Code ; and at the death of appellant's husband, when her right accrued, was the law creating and defining it.

The Court of Probate did not err in so ruling, and its judgment is affirmed.