Gilbert *et al. v.* Welsch, Administrator.

No. 7766.

GILBERT ET AL. *v.* WELSCH, ADMINISTRATOR.

75 557
149 459

DECEDENTS' ESTATES.—*Will.—Legacy.—Direction to Invest.—Bank Stock.* —A direction in a will that a legacy be put at interest must be strictly followed; and, in such case, bank stock is not a proper investment.

SAME.—*Final Report. — Legatee's Exceptions. — Evidence. — Unsupported Finding.*—Upon exceptions by a legatee to a final settlement report of an administrator with the will annexed, evidence that,without an order of court, and without the knowledge of the legatee, he invested the legacy in bank stock, in his own name,which depreciated in value, caus-ing a loss of a portion of the trust fund, and that he had paid the lega-tee the part only which remained after deducting the loss, was insuf-ficient to justify a finding and judgment confirming his report and dis-charging him from his trust as to the objecting legatee.

SAME.—*Administrator's Profit and Loss.*—In such case, the administrator, having had opportunity of profit in the rise in value of the bank stock, can not cast the loss upon the trust estate, but must suffer it himself.

SAME. —*Settlement. — Contract.—Performance.* — In such case, where the evidence shows that the parties made, and in part executed, a settle-ment on an agreed basis, the legatee has a right to enforce full per-formance.

From the Clark Circuit Court.

*M. C. Hester*, for appellants.

*C. L. Jewett* and *H. E. Jewett*, for appellee.

WOODS, J.—The appellants, who are husband and wife,. filed exceptions to the final settlement report of the appel-lee, as administrator, with the will annexed, of the estate of John Denny. Issues of fact were formed, and a trial had,. which resulted in a finding and judgment for the appellee, confirming his report and discharging him from his trust as to the appellant Agnes C. Gilbert. The only question pre-sented here is, whether the finding is contrary to the law and the evidence. There is no conflict in the evidence, and it shows the following facts :

John Denny died testate, and by his will made a bequest to his daughter, Agnes, which was not to be paid to her so long as she remained the wife of her then husband, but was to be put at interest by the executor, and the interest to be

paid to her in person. The terms of the will, so far as necessary to be considered, may be found in the opinion delivered in *Gilbert* v. *Welsch*, 51 Ind. 491, in which case it was decided that, having been divorced from her said husband, she was entitled to receive the bequest into her own possession and control. Barnett, the executor named in the will, managed the trust until June, 1874, when he made to the court a report for final settlement, showing in his hands from said legacy, for the use of said Agnes, the sum of $1,614.63, and an equal sum for her sister Eliza, and asking to be allowed to resign the trust. This report the court approved, and ordered him to pay said sums to his successor, when appointed. Thereupon the appellee was duly appointed the successor in said trust, for both said Agnes and Eliza ; but, instead of taking from Barnett the said sums in money which Barnett was ready to pay, the appellee received the sum of $79.26 in cash, and, for the remainder, took an assignment of thirty shares, of the par value of $100 each, of the capital stock of the First National Bank of Jeffersonville, Indiana, at and for the price of $105 for each share. The assignment was taken by the appellee in his own name, without any trust being expressed or indicated, but with the intention to hold the stock as an investment of said legacies ; and this intention was known to the officers of the bank. The bank was at the time prudently managed, and was paying five per cent. semi-annual dividends upon its stock, which was then worth in the market and in fact $105 per share. Before receiving the stock, the appellee made careful and proper inquiries concerning its value, and took it in good faith, believing it to be a good and safe investment. Thereafter the appellee paid to the said Agnes the dividends received upon said stock, but for each sum so paid to her she gave a receipt describing it as "interest on my legacy," or "interest on my legacy of $1,614.63," etc. In his receipt to his predecessor in the trust, the appellee had charged

himself with that sum of money received on account of the legacy of said Agnes ; the verified final statement of Barnett, with which said receipt was filed as voucher, showed the transfer of said sum in money ; and there is in the evidence nothing which shows, or fairly tends to show, that the said Agnes knew or approved of the investment in said shares of stock. Soon after the investment was made, the bank suffered unexpected losses, equal to one-fourth of the value of the capital stock, and, in consequence thereof, the original shares were cancelled, and new stock issued to the amount of seventy-five per cent. of the old, making the new shares of par value, but resulting in a loss of nine hundred dollars of the sum invested by the appellee, of which, in his said final report, he has charged the one-half against said Agnes ; and to this charge mainly the appellants address their exceptions. The new shares of stock were also issued to the appellee in his own name. The original purchase had been made by the appellee, without an order of court therefor, and the transaction had never been reported to the court or confirmed, before the confirmation of said final report, from which this appeal is prosecuted. The evidence also shows a settlement between the parties, which, according to the testimony of the appellee, the only witness who testified on the subject, was as follows : "About the 20th day of October, 1876, after the bank stock had been reduced, and while I supposed I had to bear the loss of the depreciation, Mr. Gilbert and I agreed that I should pay him, for his wife, eight hundred dollars in cash, and should transfer to them six hundred dollars of the new stock that had been issued to me, the stock to be taken at par value. I was to retain the right to receive whatever was made on the said stock from the suspended debts due the bank. In accordance with this agreement, I paid the eight hundred dollars and transferred the six hundred dollars of bank stock to Mr. Gilbert, and took the receipt of himself and wife for fourteen hundred

dollars. It was agreed further between us, at that time, that as soon as I should settle with the court, and find what more was due his wife, if anything, I should then pay such balance, if any. This agreement with Gilbert was made upon the supposition that I had to account for the sum of $1,614.63, for which I had receipted to Barnett as so much money.''

The appellants claim, upon these facts, that the loss on the bank shares is the individual loss of the appellee, because the investment was made without authority of the court, was made in his own name as an individual investment, and, if made in execution of the trust, it was in violation of the terms of the will, which required the legacy to be put at interest. On the other hand, the counsel for the appellee claim, on the authority of 1 Perry Trusts, secs. 452, 460, that the direction to put at interest, means no more than a direction to make the fund productive, and that the appellee's duty was to make an investment, without waiting for an order of court therefor. They further argue that bank stock is a proper investment, and claim that it is so held in by far the greater number of the States of the Union, wherein the courts have passed upon the question. They cite *Harvard College* v. *Amory*, 9 Pick. 446; *Lovell* v. *Minot*, 20 Pick. 116; *Clark* v. *Garfield*, 8 Allen, 427; *Smyth* v. *Burns*, 25 Miss. 422; *Brown* v. *Wright*, 39 Ga. 96; *Hammond* v. *Hammond*, 2 Bland Ch. 306; *Gray* v. *Lynch*, 8 Gill, 403; *Murray* v. *Feinour*, 2 Md. Ch. 418.

There are several reasons why, in our judgment, the loss in question must be borne by the appellee. First, because, at the beginning of his trust, withholding the truth of the case from the court and the parties interested, he charged himself on the record with money not, in fact, received, and took the assignment of the stock in his own name. Further than the facts stated, there is no ground for charging any bad faith, and it is to be presumed that none was intended ;

yet, by the course pursued, the appellee, in some measure, saved the opportunity of claiming for himself the benefit of any rise in the value of the shares, and, a loss having occurred, he should not be permitted to cast it upon the trust estate. The rule, which requires that trust funds be kept separate from individual moneys or investments, can not be relaxed with safety: It is well settled, that, if a trustee deposit the trust fund in bank, in his own name, he will be charged with interest upon it, and, if a loss occur, through failure of the bank, or otherwise, he must suffer it. 1 Perry Trusts, secs. 443, 444, 468, and cases cited. It is true that, in *Richardson* v. *The State, ex rel.*, 55 Ind. 381, it was held that the taking of notes by a guardian, in his own name, for moneys belonging to his ward, was not conclusive proof of a conversion. On this subject, see *The State, ex rel.*, v. *Sanders*, 62 Ind. 562 ; *Lowry* v. *The State, ex rel.*, 64 Ind. 421 ; *Tucker* v. *The State, ex rel.*, 72 Ind. 242.

But the question before us is not a question of conversion, nor one to be determined by the same test. Whether a conversion of the trust money or property has occurred, depends somewhat upon the intention of the trustee in doing the act which is claimed to constitute the conversion, as well as upon the nature and consequences of the act, but the rule which holds the trustee personally responsible for losses incurred of money deposited or invested in his own name, rests, as we conceive, upon different considerations. By deposits and investments in his own name, the trustee obtains advantages by way of personal credit and otherwise, to which he is not justly entitled, and good policy, with a view to the faithful conduct of those who are made trustees, requires that they should, in such a case, take the risk of loss, and, that there should be no inquiry permitted into the good faith of such transactions, the secret springs of which, in most cases, it would probably be impossible to discover.

In the second place, the provision of the will, that the legacy should be put at interest, is equivalent to a direction that the fund be either loaned at interest, or invested in an interest-bearing security. The law is, that such directions in a last will or testament must be strictly followed. 1 Perry Trusts, secs. 452, 460, 461. It can not be properly said that shares of capital stock in a bank are interest-bearing securities. Dividends, customarily at least, are declared at the will of a board of directors. They may be small or great, or, if emergencies require, may be omitted entirely. But interest is a matter of contract, certain in amount and in the terms of payment, and always enforceable by the ample remedies of the law, if the loan or investment be prudently made.

In the third place, the evidence shows that the parties made, and in part executed, a settlement between themselves, on a basis inconsistent with the position now taken by the appellee. That settlement was made upon the understanding that the appellee was accountable for $1,614.63 in money, and, upon that understanding, the appellants consented to accept of him, in part payment, $600 of his new bank stock. That stock is not money, and may or may not be, or have been, worth the price at which it was taken but, having accepted it of the appellee on the theory that he must account for the sum named, they have the right to have the account adjusted on that basis.

Exception is also made to some small items of costs paid by the appellee, but we do not find that any error has intervened in reference thereto.

A motion to dismiss the appeal in this case has been filed. In this respect, the facts are substantially the same as in *West* v. *Cavins,* 74 Ind. 265, and, in accordance with the decision made in that case, the motion must be overruled.

The judgment is reversed, with costs, and with instructions to grant a new trial.