In the matter of the accounting of CHARLES E. GREEN, one of the executors of Henry W. Green, deceased.

An executor received from the estate railroad stock, which he had the power, under the will, to assign to himself as trustee under a marriage settlement. In the exercise of reasonable care and caution, he sold the stock, in the course of administration, after it had depreciated considerably in value.—*Held*, that he was not required to consult or obtain the assent of the beneficiary under the marriage settlement, before effecting the sale, and was not personally liable for the loss sustained by the estate through the sale, although the market value of the stock afterwards increased.

On exceptions to the account.

*Mr. H. C. Pitney*, for the exceptants.

*Mr. B. Gummere*, for the accountant.

THE ORDINARY.

This matter comes before me on exceptions to the account of Charles E. Green, one of the executors of the will of Henry W. Green, deceased. The account was filed October 16th, 1877. The exceptions are filed by Mrs. Emily A. Blackwell, daughter and one of the residuary legatees, and her son, William. B. Blackwell, Jr., who is interested under the provision of her marriage settlement. There are several exceptions, but the attention of the court was called, on the argument, to only one of

Green's Case.

those (the third) filed by each exceptant. That exception calls
in question the conduct of the accountant in selling seven hun-
dred and fifty shares of the stock of the Chicago, Burlington
and Quincy Railroad Company, of the par value of $75,000,
for $72,743.75. The stock was sold on or about the 21st and
22d of March, 1877. It was derived from the estate of the
testator's brother, John C. Green, deceased, and was received as
part of the share of the testator of the residue of that estate.
It was received after the testator's death. He died in January,
1877. The will was proved on the 16th of that month, and an
inventory was filed on the 30th. In the inventory appears the
item of "Interest in the estate of the late John C. Green
[brother of decedent], value not yet ascertained." The inventory
was filed by both of the executors. The account is by only one.

NOTE.—Executors or trustees have been held liable for not selling stocks
&c. which were not sanctioned by law as investments, in the following cases :

For not collecting a bond of their testator, while the obligor was solvent,
*Lowson* v. *Copeland*, 2 Bro. C. C. 156 ; *Powell* v. *Evans*, 5 Ves. 839 ; *Bullock* v.
*Wheatley*, 1 Coll. 130 ; *Chapman* v. *Shepherd*, 24 Gratt. 377 ; *Pierce* v. *Pres-
cott*, 128 Mass. 146 ; *Darrell* v. *Eden*, 3 Desauss. 241 ; see *East* v. *East*, 5 Hare
343 ; *Holcomb* v. *Holcomb*, 3 Stock. 281, 301 ; *Ashurst* v. *Potter*, 2 Stew. Eq.
625, 632 ; *Lacey* v. *Stamper*, 27 Gratt. 42 ; *Livingston* v. *Jones*, Harring. (*Mich.*)
165.

For investing a legacy in bank stock and retaining it long after the bank
was insolvent, *Ackerman* v. *Emott*, 4 Barb. 626.

For investing in Exchequer Bills, in 1846, although, if they had been re-
tained until the time of entering the decree, there would have been no loss,
*Knott* v. *Cottee*, 16 Beav. 77.

For retaining Crystal Palace shares, which were at a premium when the tes-
tator died, but subsequently fell below par, *Hughes* v. *Empson*, 22 Beav. 181.

For retaining bank stock of the testator for more than eighteen months after
his death, *Gillespie* v. *Brooks*, 2 Redf. 349 ; *Goodwin* v. *Howe*, 62 How. Pr.
134 ; *McKenzie* v. *King* (*N. B.*), Stevens's Dig. 666 § 13.

For retaining bank stock turned over to him by his predecessor in the trust,
*Mills* v. *Hoffman*, 26 Hun 594 ; *Gilbert* v. *Welsch*, 75 Ind. 557.

For retaining canal shares for three years after the time fixed by order of
the court to sell them, *Davenport* v. *Stafford*, 14 Beav. 319.

For investing in and holding stock in a navigation company, which paid
very large dividends for eight years thereafter, *Worrell's Appeal*, 9 Pa. St.
508 ; 23 Pa. St. 44.

For delaying in selling cotton of the estate for fourteen months, under the
belief that it would advance in price, *Pulliam* v. *Pulliam*, 10 Fed. Rep. 53.

In a schedule appended to the account is a statement of the per-
sonal property received by the accountant from the estate of John
C. Green, among which are the shares of stock in question,
which are there stated to be of the value of $78,750, and the
accountant prays allowance for the difference between the value
stated in the schedule and the price obtained.  The stock appears
to have been received in February or March, 1877, and, as be-
fore stated, was sold on or about the 21st or 22d of the latter
month.  The propriety of the sale is questioned by the except-
ants, on two grounds.  The first is that the provisions of the will
and the marriage settlement put upon the executors (who were
the trustees under the latter) the duty of obtaining Mrs. Black-
well's consent to the sale, which they did not do.  The other is,
that, granting that the executors had the power to sell without

For subscribing for new stock under a privilege offered by the corporation
in which testator already held stock, *Lacey* v. *Davis, 4 Redf. 402;* see *Brin-
ley* v. *Grou,* (*Conn.*) *14 Rep. 173.*

For paying an assessment on stock standing in the testator's name, *Snow's
Estate, Meyrick 97; Mills* v. *Hoffman, 26 Hun 594.* See *Ripley* v. *Sampson, 10
Pick. 371.*

For transferring to himself bank stock standing in testator's name, *Jameson*
v. *Shelby, 2 Humph. 198.*

For buying city bonds or scrip in addition to those of the same city donated
by testator, *Trustees* v. *Clay, 2 B. Mon. 385.*

For promissory notes turned over to and not collected by his successor, *Fos-
ter's Case, 15 Hun 387.* See *Lacey* v. *Stamper, 27 Gratt. 42.*

For not selling an unfinished yacht of testator for more than a year after his
death, *Lufberry's Estate, 12 Phila. 6.*

They were held not liable in the following cases:

For allowing testator's investment in Mexican bonds to remain a year and
seven months after his death, and then selling them at a lower price than an
earlier sale would have produced, *Buxton* v. *Buxton, 1 Myl. & Cr. 80.*

For retaining part of the assets in turnpike bonds, when directed to invest in
other specified securities, *Robinson* v. *Robinson, 1 De G. M. & G. 247;* see *Mur-
ray* v. *Feinour, 2 Md. Ch. 418; Contee* v. *Dawson, 2 Bland 264, 289; Barris-
ter* v. *McKenzie, 6 Munf. 447.*

For *bona fide* retaining stock in a steamboat company, *Williams* v. *Maitland,
1 Ired. Eq. 92.*

For shipping and selling cotton in Liverpool instead of Charleston, whereby
a loss ensued, *Bryan* v. *Mulligan, 2 Hill Ch. 363;* see *Clary* v. *Sanders, 43 Ala.
287; Callaghan* v. *Hall, 1 S. & R. 241.*

For retaining a ward's estate in stock of the Bank of the United States for

Green's Case.

her consent, they ought not, in justice to those interested under the marriage settlement, to have sold the stock, because, although at the time of sale its market value had fallen, it was, in fact, a valuable dividend-paying investment, and so proved to be afterwards. The will of the testator, it may be observed, gives no direction as to investments, except that it provides that it shall be lawful for the trustees, under the marriage settlement, to hold, as part of the trust-funds, without being liable for the depreciation of the same in value, any bonds, stocks or securities belonging to his estate, and which may be, by his executors, assigned to the trustees as part of his daughter's distributive share. The marriage settlement provides that it shall and may be lawful for the trustees and the survivors of them, and the executors, ad-

four years, *Boggs* v. *Adger*, *4 Rich. Eq. 408; Nyce's Estate, 5 W. & S. 254; French* v. *Currier, 47 N. H. 88.* See *Brisbane* v. *Bank, 4 Watts 92.*

For accepting from his predecessor and retaining judgment-bonds, which afterwards became worthless through an extraordinary depreciation in real estate, *Jack's Appeal, 94 Pa. St. 367.* See *Dietterich* v. *Heft, 5 Pa. St. 87.*

For depreciation in stock during the continuance of an injunction which restrained the administratrix from disposing of the stock, *Greiner* v. *Greiner, 8 Stew. Eq. 134.* See *Bolling* v. *Tate, 65 Ala. 417.*

For retaining, to await the result of a suit pending against the estate, the stock of a bank which was then considered safe, but failed before the suit was ended, *Dugan* v. *Hollins, 11 Md. 41;* see *Doster* v. *Arnold, 60 Ga. 316; Lafont* v. *Ricard, Bail. Eq. 487; Mickle* v. *Brown, 4 Baxt. 468; Matthews* v. *Downs, 1 Jones Eq. 331; Latimer* v. *Hanson, 1 Bland 51.*

For holding railroad stock until it had greatly depreciated, *McRae* v. *McRae, 3 Bradf. 199.*

For exchanging notes of a manufacturing company held by testator for stock of another manufacturing company, *Brown* v. *Campbell, Hopk. 233;* see *Lovell* v. *Minot, 20 Pick. 116; Adair* v. *Brimmer, 74 N. Y. 539; Pray's Appeal, 34 Pa. St. 100.*

For retaining railroad stock for six years, during great fluctuations in its price, and a financial panic, *Weston* v. *Ward, 4 Redf. 415;* affirmed, *N. Y. Ct. of App., March, 1883; Troup* v. *Rice, 55 Miss. 278; Bowker* v. *Pierce, 130 Mass. 262;* see *Foscue* v. *Lyon, 55 Ala. 440, 450; Gray's Case, 27 Hun 455.*

For relinquishing several thousand dollars' worth of stock invested by the testator, by way of compromise, *Pierson* v. *Thompson, 1 Edw. Ch. 212.*

For retaining for four months an ostrich which had belonged to decedent and which then died, *Secondo Bosio's Estate, 2 Ashm. 437.*

For retaining bank and navigation company's stock, then supposed to be unexceptionable as investments, *Barton's Estate, 1 Pars. Eq. 24; Rush's Estate,*

17

ministrators and assigns of such survivor (and they are thereby
authorized to do so accordingly), at any time or times, by and
with the consent of the settlor (the testator), and of his daughter
Emily, or of the survivor of them, testified in writing, if they
or either of them be living, and after the decease of the sur-
vivor, then of the proper authority of the trustees or trustee for
the time being, to sell, transfer and dispose of the bonds and
securities which are the subject of the trust, and make new in-
vestments on the same trust.    It was held in *Green* v. *Green, 3
Stew. Eq. 451,* that Mrs. Blackwell's share of the residue of the
testator's estate was subject to the provisions of the marriage
settlement, and that the executors, as trustees under the settle-
ment, were at liberty to hold the identical securities which might
be assigned to them for, or as part of, her share of the residue.
The executors have not, in fact, made any assignment to or di-
vision of the securities among the residuary legatees.    It is in-
sisted, however, by the exceptants, that that fact cannot affect

*12 Pa. St. 375;* see *McMurtrie* v. *Pa. Co., 9 Phila. 529, 75 Pa. St. 304;* *Dun-
can* v. *Jaudon, 15 Wall. 165, 174.*

For assets of a dissolved insurance company in which both the intestate and
the administrator had been stockholders, *Harris* v. *Parker, 41 Ala. 604.*

For holding *second*-mortgage railroad bonds, which were worth at testator's
death about £150 each, for fifteen months, when they were worth about £54
each, although frequently pressed meanwhile by one of the legatees to sell,
*Marsden* v. *Kent, L. R. (5 Ch. Div.) 598;* but see *Brown* v. *French, 125 Mass.
410; McDonald's Case, 4 Redf. 321; Clark* v. *Anderson, 13 Bush 111.*

For leaving an investment in stock of the United States Bank, under a dis-
cretion given to the trustees so to do, so long as they might deem it most for
the interest of testator's family, *Hogan* v. *De Peyster, 20 Barb. 100; Gray* v.
*Lynch, 8 Gill 403.* See *Smith* v. *Smith, 7 J. J. Marsh. 238.*

For allowing government bonds of the estate to be kept, as testator had done,
by his nephew, who converted them, *McCabe* v. *Fowler, 84 N. Y. 314.*

For leaving in a savings bank funds deposited there by the testator, the
bank having failed within a year after testator's death, *Seidler's Estate, 5 Phila.
85.*

For rents that might have been obtained by a more efficient agent than the
one whom the testator had employed and his executors retained, *Beck's Estate,
12 Phila. 74.*

Whether the trustees are to be charged with the money improperly invested,
or with the value of the stock, at any time during the continuance of the in-
vestment, *10 N. Y. Leg. Obs. 321; Livermore* v. *Wortman, 25 Hun 341.*—REP.

the question of liability, because the sale of the stock was not necessary to pay the debts or to settle the estate. The persons who were interested in the stock in question were the accountant and his mother and his sister, Mrs. Blackwell, and her son. When the stock was sold, the settlement of the estate had been in progress for only about two months, and the stock was held by the executors as executors, and not as trustees under the marriage settlement. It had been depreciating in the market. Between the 1st and 19th of March it had, with some little fluctuations, run down in market price from one hundred and nine and one-half to ninety-five and one-half. The accountant gives as his reason for selling that there was a general feeling of apprehension and uncertainty in the minds of eminent financiers with regard to the stock; that there was a rumor and a statement in the public press that a noted speculator, whom he names, was endeavoring to get hold of a certain part of the railroad, with a view to effecting his own purposes, antagonistic to the interest of the company, and that, on consultation with gentlemen of high standing in financial matters in New York, he was induced, in view of their opinion and of the circumstances, to sell. It is noteworthy that he was himself interested to the extent of one-third in the stock and his mother to a like extent. It is also worthy of remark that his co-executor, who was the owner in his own right of seven hundred and fifty shares of the stock, sold four hundred and fifty of them below par, apparently about the same time. He says he sold his stock in the exercise of his best judgment, and for the preservation of his estate. The company was located at a distance. The investment was not of such a character as the court would approve. The executor appears to have acted in the matter in perfect good faith, and with commendable circumspection, care and prudence, and with wise caution. That the stock subsequently rose in value, and the sequel proved that it would have been more profitable to the estate if it had been held, does not affect the determination of the question whether his act was lawful and proper at the time. Had he, under the circumstances, continued to hold the stock, and had it fallen still lower and a loss been

occasioned to the estate by his failure to sell when he did, he would have been guilty of a *devastavit*. It was his duty to sell when he did.

But it is urged that the marriage settlement made it obligatory on him, as trustee, not to change the investment without the consent of Mrs. Blackwell. It is enough to say that the stock had not, when it was sold, been assigned in any way to her share, but constituted part of the testator's estate in the accountant's hands for administration. Nor was there any obligation on the executors to assign any part of the stock to Mrs. Blackwell's trustees. They might have done so had they seen fit, but they were not bound to do it. The will gave them permission to hold, as trustees under the marriage settlement, such securities as they might see fit to assign for the purpose, but it did not require them to assign any. As matters stood when the sale of the stock took place, they would not have been justifiable in assigning the stock, which was then falling in the market, to the marriage settlement trust. The exceptions will be overruled, with costs.